# NORBACK v. BOARD OF DIRECTORS OF CHURCH EXTENSION SOC.

No. 5178.   Decided October 22, 1934.   (37 P. [2d] 339.)

*H. A. Belnap,* of Ogden, for appellant.

*DeVine, Howell & Stine,* of Ogden, for respondent.

MOFFAT, Justice.

This is an action by plaintiff to establish a claimed easement, for an order enjoining defendant from asserting a claim as against plaintiff thereto and for damages. In order to show the nature of the action, it is necessary to set out more or less completely the substance of the pleadings. Plaintiff alleges (aside from corporate existence, etc.) that he is, and since February 14, 1910, has been, the owner of a tract of land described as follows:

"A part of Lot 10, in Block 30, in Plat 'A' of Ogden City Survey: Beginning at a point 7 rods south from the northeast corner of said Lot, and running thence west 8 rods; thence south 18 feet; thence east 8 rods; thence north 18 feet to the place of beginning, situated in Weber County, Utah";

that plaintiff and his grantors, for more than twenty years prior to January 27, 1930, have used a private driveway or roadway over and across the land of the defendants described as follows:

"A part of Lot 10, in Block 30, in Plat 'A' of Ogden City Survey, in Weber County, Utah: Beginning at the northwest corner of said Lot 10, in Block 30, Plat 'A', Ogden City Survey, and running thence south 7 rods; thence east 1 rod; thence north 7 rods; thence west 1 rod to the place of beginning";

and that such use has been "continuous, adverse, uninterrupted, open, peaceable, exclusive, under a claim of

right, and with the knowledge and acquiescence of the owner or owners thereof, and without objection on the part of the defendants, or either of them"; that defendants have obstructed said road so that the plaintiff cannot use the same "by building a fence across it on February 25, 1930." The following is a sketch showing the relation of the respective properties and claimed easement:

For a second cause of action, plaintiff "refers to the paragraphs numbered one to seven inclusive of his first cause of action" (being all the paragraphs thereof), and then alleges that by the building by defendants of the fence across said road plaintiff has been damaged in the sum of $200; "that defendants by their said acts have created and are maintaining a nuisance, and intend and threaten to continue to maintain the same." Plaintiff prays judgment:

"1. That defendants be required to set forth the nature of their claim, and that all adverse claims of the defendants be determined by a decree of this court; that by said decree it be determined and adjudged that plaintiff is the owner of and entitled to the right of way hereinabove described; that defendants be forever debarred and enjoined from asserting any claim whatever in or to said right of way as against this plaintiff, and for such other and further relief as to this court may seem meet and just in the premises, and for costs of suit.

"2. On the second cause of action that plaintiff recover judgment of and from the defendants in the sum of $200.00, with legal interest from February 25, 1930, until paid, and costs; and that the defendants and each of them be enjoined and forever debarred from asserting any claim whatever in or to said right of way as against this plaintiff, and for such other relief as to the court may seem just."

The defendants in their answer admitted the corporate existence of one of the defendants, the ownership by the corporate defendant of the land alleged by plaintiff to be owned by it; admitted that plaintiff had used a driveway, across land owned by the corporate defendant for a period of five years prior to February, 1930, with the consent and acquiescence of said corporate defendant, and without objection on its part, but alleged that such use of said drive-

way was permissive on the part of the said corporate defendant, and solely as a matter of convenience to plaintiff, with the understanding and agreement that he would acquire no rights thereby; and denied all the other allegations of both causes of action set forth in plaintiff's complaint.

By way of counterclaim the corporate defendant alleges that it is now, and for many years has been, the owner of the tract of land described in the complaint as owned by it; alleges that plaintiff wrongfully makes the claim set forth in his complaint to the right of way described across the land as therein described; that plaintiff has no right, title, or interest in or to said tract of land, or any part thereof, and said claim set forth in said complaint, or any claim on his part in and to said tract of land, or any part thereof, or to any right, title, or interest therein, is wrongful and without any right whatsoever.

Defendants prayed a dismissal of the action, and the corporate defendant, in addition to a dismissal, that it be adjudged that plaintiff has no estate, right, title, or interest therein; that he and all persons claiming under or through him be perpetually enjoined from claiming any estate, or right, title, or interest in and to said tract of land, or any part thereof. Plaintiff replied denying all the new matter contained in the answer and counterclaim.

Upon the issues made by these pleadings, plaintiff demanded a jury trial which was refused by the court, and this is the first error relied upon by plaintiff for the reversal of the judgment of the trial court. In the view we take of the case, the assignment of error based upon the refusal of the trial court to grant a jury trial after a timely demand was made and the fee paid is the only assignment of error we need to discuss.

"The right of trial by jury is a constitutional right, and every litigant, in an action of legal cognizance, has an absolute right to that method of trial, a right which the court may not disregard." *Eyak River Packing Co.* v. *Huglen et al.,* 143 Wash. 229, 255 P. 123, 129, 257 P. 638.

The Constitution of the state of Utah provides (article 1, § 10) that "a jury in civil cases shall be waived unless demanded." No question is raised upon this appeal as to the demand for a trial by jury having been timely made, the fee paid, or failure to take other action necessary to entitle the plaintiff to a trial by jury, other than that the action is one in equity. The ground upon which the trial court rested its denial of plaintiff's demand is that the issues were equitable. The trial court indicated that there was some conflict and uncertainty in the decisions upon the matter. As to the law relating to the right of trial by jury, there is and may be no uncertainty. If the trial of the cause calls for the application of equitable principles rather than legal principles as ordinarily accepted, the case is one for a court of equity rather than a court of law. Under the Code, or, as sometimes designated, the reformed procedure, the question is not one of jurisdiction as both law and equity may be administered in the same action. Constitution of Utah, art. 8, § 19; Comp. Laws Utah 1917, §§ 5838, 5839.

The distinction sought to be here drawn is so clearly and definitely stated by Pomeroy in his Equity Jurisprudence (4th Ed.) vol. 1, that a quotation, though somewhat lengthy, is pertinent and helpful:

Section 129: "It is important to obtain at the outset a clear and accurate notion of what is meant by the term 'Equity Jurisdiction.' It is used in contradistinction to 'jurisdiction' in general, and to 'Common-law jurisdiction' in particular. In its most general sense the term 'jurisdiction,' when applied to a court, is the power residing in such court to determine judicially a given action, controversy, or question presented to it for decision. If this power does not exist with reference to any particular case its determination by the court is an absolute nullity; if it does exist, the determination, however erroneous in fact or in law, is binding upon the parties until reversed or set aside in some proceeding authorized by the practice, and brought for that express purpose. It is plain that the term used in this strict sense may be applied to courts of equity as well as to any other tribunals. With this signification of the word, it would be said that an equity court has no jurisdiction to try the issues arising upon an

indictment, and to render judgment in a criminal prosecution; the entire proceeding would be null and void. On the other hand, it is equally plain that this strict meaning is not always given to the term 'equity jurisdiction,' as it is ordinarily used. The proceedings and judgment of a court of chancery or of a court clothed with equity powers are not necessarily null and void because the action is not one which comes within the scope of the 'equity jurisditcion' in the common acceptation of that phrase, or in other words, because the claim is one for which there is a full, adequate, and complete remedy at law. This well-settled rule furnishes a decisive test, and shows that when ordinarily speaking of the 'equity jurisdiction' we do not thereby refer to the general power inherent in a court to decide a controversy at all,—a power so essential that its absence renders the decision a mere nullity, but we intend by the phrase to describe some more special and limited judicial authority."

Section 130: " 'Equity jurisdiction,' therefore, in its ordinary acceptation, as distinguished on the one side from the general power to decide matters at all, and on the other from the jurisdiction 'at law' or 'Common-law jurisdiction,' is the power to hear certain kinds and classes of civil causes according to the principles of the method and procedure adopted by the court of chancery, and to decide them in accordance with the doctrines and rules of equity jurisprudence, which decision may involve either the determination of the equitable rights, estates, and interests of the parties to such causes, or the granting of equitable remedies. In order that a cause may come within the scope of the equity jurisdiction, one of two alternatives is essential; either the primary right, estate, or interest to be maintained, or the violation of which furnishes the cause of action, must be equitable rather than legal; or the remedy granted must be in its nature purely equitable, or if it be a remedy which may also be given by a court of law, it must be one which, under the facts and circumstances of the case, can only be made complete and adequate through the equitable modes of procedure. At the same time, if a court clothed with the equity jurisdiction as thus described should hear and decide, according to equitable methods, a case which did not fall within the scope of the equity jurisprudence, because both the primary right invaded constituting the cause of action and the remedy granted were wholly legal, and belonging properly to the domain of the law courts, such judgment, however erroneous it might be and liable to reversal, would not necessarily be null and void. On the contrary, as will be more fully stated hereafter, the objection that the case does not come within this so-called equity jurisdiction must ordinarily be definitely raised by the defendant at the commencement of the proceedings, or else it will be regarded as waived, and the judgment will

not even be erroneous. In some instances, however, where the equitable functions of the court are specifically defined by statute, or the facts show very clearly that the rights involved in the controversy and the remedies demanded are purely legal, and completely within the scope of ordinary legal proceedings, the court of equity will itself take the objection at any stage of the cause, and will dismiss the suit, although no objection has in any way been raised by the parties."

Section 131: "It is plain, from the foregoing definitions, that the question whether a given case falls within the equity jurisdiction is entirely different and should be most carefully distinguished from the question whether such case is one in which the relief peculiar to that jurisdiction should be granted, or in which the equity powers of the court should be exercised in maintaining the primary right, estate, or interest of the plaintiff. The constant tendency to confound these two subjects, so essentially different, has been productive of much confusion in the discussion of equitable doctrines. Equity jurisdiction is distinct from equity jurisprudence. One example will suffice to illustrate this important proposition. A suit to enforce the specific performance of a contract, or to reform a written instrument on the ground of mistake, must always belong to the equity jurisdiction, and to it alone, since these remedies are wholly beyond the scope of common-law methods and courts; but whether the relief of a specific performance, or of a reformation, shall be granted in any given case, must be determined by an application of the doctrines of equity jurisprudence to the special facts and circumstances of that ase. The same is true of every species of remedy which may be conferred, and of every kind of primary right, estate, or interest which may be enforced or maintained, by a court possessing the equitable jurisdiction. In other words the equity jurisdiction may exist over a case, although it is one which the doctrines of equity jurisprudence forbid any relief to be given, or any right to be maintained. This conclusion is very plain, and even common-place; and yet the 'equity jurisdiction' is constantly confounded with the right of the plaintiff to maintain his suit, and to obtain the equitable relief. This is, in fact, making the power to decide whether equitable relief should be granted to depend upon, and even to be identical with, the actual granting of such relief."

The question therefore is: Are legal or equitable principles to be applied? If the principles to which appeal must be had are principles of law in the main or primary action, either party thereto upon demand is entitled to a trial by jury. This is true, "although in the action application is

made to the court to exercise its equity powers in
granting injunctive relief." *State ex rel. Hansen* v.
*Hart,* 26 Utah 229, 72 P. 938, 939. Where the issues
are legal issues, the fact that equitable relief may be prayed
for, to carry into effect the judgments based upon the legal
issues, "is not sufficient to deprive either party of his rights
to have the legal issues submitted to a jury." *State ex rel.
Hansen* v. *Hart,* 26 Utah 229, 72 P. 938, 939.

"It has long since been held that under our system a legal and
equitable remedy may be sought in the same action; but each remedy
must be governed by the same law that would apply to it if the
other remedy had not also been asked for." *Hughes* v. *Dunlap,* 91 Cal.
385, 27 P. 642, 643.

In its memorandum of decision, the trial court indicated
there was some "conflict and uncertainty" in the decided
cases. No reference is made by the trial court to any par-
ticular decisions of this court that have resulted in con-
flict and uncertainty. Whether or not the trial court had
in mind what is said in the case of *Thompson et al.* v. *Bown
Live Stock Co. et al.,* 74 Utah 1, 276 P. 651, we have no in-
formation. There is a statement made in that case at page
17 of the Utah report and page 657 of 276 P., that, when
applied to the case then before it, the court was able to say
that no prejudice or injury resulted. Had the case been an
equity case, no prejudicial error was committed. The state-
ment there made is:

"There is this to be said in addition, which, at least in the view
of the writer of the opinion, is conclusive that no prejudicial error was
committed by the trial court in discharging the jury and in refusing
to submit the issues of fact to a jury."

If it be conceded that the action was a law action, the
statement above quoted is clearly erroneous. That either
party to an action at law has the right to a trial by jury
when timely and properly demanded is supported by the law
and the decided cases. Comp. Laws Utah 1917, §§
6781, 6782; *Hughes* v. *Dunlap,* 91 Cal. 385, 27 P. 642;
*Newman* v. *Duane,* 89 Cal. 597, 27 P. 66; *State ex rel.
Hansen* v. *Hart,* supra; *Atkinson* v. *J. R. Crowe Coal &*

*Mining Co.*, 80 Kan. 161, 102 P. 50, 106 P. 1052, 39 L. R. A. (N. S.) 31, 18 Ann. Cas. 242.

We are of the opinion the instant case is an action at law. Almost without exception, the rule is that actions to try the title of real estate shall be tried to a jury. *Atkinson* v. *J. R. Crowe, etc., Co.,* supra. This for the apparent reason that the matters in issue are matters of fact, to which legal principles are applied, and, further, many statutes provide that actions for the recovery of specific real property may be tried to a jury unless waived. It is further in *Atkinson* v. *J. R. Crowe, etc., Co.,* supra, stated, quoting from Cyc., that questions as to the legal title to land are of right triable by jury, and this cannot be abrogated by statute. In the case of *Goldthwait* v. *Lynch,* 9 Utah 186, 33 P. 699, 700, where there was some question as to equitable or legal issues, the following occurs: "But was that cause of action one of which equity could take cognizance? We think not. It was purely an action for damages for breach of contract, and defendants were entitled to have it tried by a jury," although the plaintiff was claiming specific performance under a contract under which tender of deed had been made and refused.

Recurring to the case of *Hughes* v. *Dunlap,* supra, the court discusses principles applicable as follows:

"There is a disposition to assume that the right to a jury trial is determined entirely by the form of action which the plaintiff chooses to adopt. We had occasion, in *Donahue* v. *Meister,* 88 Cal. 121, 25 P. 1096 [22 Am. St. Rep. 283], to say that such a position is not tenable."

The California court court then proceeds to illustrate:

"If two coterminous owners of land have a dispute about the ownership of a piece of land lying along the common boundary, and one brings an action of ejectment to recover it, undoubtedly the other would be entitled to a jury on the trial of the cause. But suppose he chooses to bring an action for an injunction, averring that the other party is cutting timber, or committing some other waste, on the disputed territory, and praying to have him enjoined from so

doing, without asking for damages; would the defendant, in that case, be deprived of the right to a jury trial? In the case at bar, if the plaintiff had merely asked for damages caused by the alleged acts of the defendant, the action would have been the common action of trespass; in which defendant, of course, would have been entitled to a jury. Does the fact that he also prayed for an injunction take away from him the right to have the real issues of fact tried by a jury? Of course, it is always for the judge sitting as a chancellor to determine whether, when certain rights are established, he will grant an equitable remedy prayed for, or compel a party to be satisfied with his legal remedy; but when the asserted rights upon which any remedy must rest are legal rights, and cognizable in a court of law, must not those rights be determined according to the methods of a common-law court? And, in such a case, can a party be deprived of his constitutional privilege of a jury? 'The writ of injunction, being largely a preventive remedy, will not ordinarily be granted when the parties are in dispute concerning their legal rights, until the right is established at law; and if the right for which protection is sought is dependent upon disputed questions of law which have never been settled by the courts of the state, and concerning which there is an actual existing dispute, equity will withhold relief until the questions of law have been determined by the proper courts.' High, Inj. § 8."

In the instant case suppose the parties were reversed, and the defendants had brought an action against the plaintiff for trespass and damages and for an injunction to restrain further trespass by the defendant in such action; clearly the defendant would have been entitled to a jury trial. Suppose further that such defendant had then set up as defenses the identical claims he set up in his complaint in this action; would he not still be entitled to a jury trial of the issues?

The primary purpose of the instant case is the establishment of an easement based upon an alleged prescriptive user. If plaintiff fails in this, his cause of action falls. The right of injunctive relief cannot come into existence until the easement has been established. This issue the plaintiff was entitled to have tried to a jury. The court may grant or refuse the auxiliary relief of restraining interference therewith after the easement has been found to exist. Should the jury find no easement, under proper instructions of the court, in so far as plaintiff is concerned, both injunc-

tive relief and damages cease to be of any consequence. The determination of the issue as to whether or not plaintiff has a prescriptive easement over the lands, the title to which is conceded to be in defendants, is one based on fact. The questions of whether or not the way in question has been used for more than twenty years, whether or not the use has been open, adverse, continuous, visible, notorious, and under claim of right with knowledge and acquiescence, and not merely permissive or by license, are the basic facts to be established, and the plaintiff had a right to have them submitted to a jury. 19 C. J. 965, § 199; *Polson* v. *Ingram,* 22 S. C. 541; *Farmer* v. *Bright,* 183 N. C. 655, 112 S. E. 420.

In the case of *Humphreys* v. *Blasingame,* 104 Cal. 40, 37 P. 804, 805, the question was whether an easement had been acquired by user or whether the use was permissive. Quoting from an earlier case, *Thomas* v. *England,* 71 Cal. 456, 12 P. 491, the court said:

"The question is one for the jury, or for the court sitting as such, to determine as a fact, in the light of the relations between the parties, and all the surrounding circumstances."

Thompson on Real Property, vol. 1, § 475, makes the following statement:

"In an action to establish a right of way by prescription the question is for the jury whether the use was under a claim of right, or was merely a matter of neighborly accommodation."

The cases cited in support of the text are all cases in which the question of the existence of an easement was being tried to a jury; but whether the right to have the issue so being tried submitted to a jury in the first instance is not presented.

In the case of *Rhea* v. *Forsyth,* 37 Pa. 503, 78 Am. Dec. 441, in an action for injunctive relief in a court of equity, we find:

"The American cases are very numerous to the effect that the right of the complainant ought to be admitted or established at law before

granting an injunction. (Cases cited.) * * * Neither the equitable jurisdiction of the court below, nor our jurisdiction, can properly attach until the plaintiff has established his right at law. Has the alley been in common use so long that the successors in the title may set up the presumption of a grant? If not, did the defendant dedicate it to the use of the plaintiff's lot? These are questions for a court and jury to decide in an action at law."

In *Taylor* v. *Wright,* 76 N. J. Eq. 121, 125, 79 A. 433, 435, we find:

"If the easement here asserted by complainant exists, it arises from well-defined rules of law and is a legal as distinguished from an equitable estate or interest. * * * That tribunal is the proper tribunal to determine the existence or non-existence of an easement or other legal estate in lands, and this court cannot properly determine an issue of that nature except to such extent as may be necessary to prevent irreparable injury." (Cases cited.)

Whether or not the law courts and the equity courts were separate courts, the analogy of the situation is pertinent to the issues in the instant case. The necessity of establishing the easement at law before equity principles or "Equity Jurisprudence," as distinguished by Pomeroy, may be applied to injunctive relief, is apparent, although under our procedure both may be accomplished in the same action.

There being no statute in this state fixing the time or conditions under which a right of way may be acquired, the method by which prescriptive rights may be claimed is by prescription at common law. Some may distinguish a presumed lost grant. Such would still be a common-law easement or prescriptive easement by way of a presumptive lost grant. In any event, the determination of whether or not an easement exists calls for legal action to establish a legal estate or interest therein.

The large number of cases that have discussed this problem may not be harmonized. Statutes differ. The time of rendition as referred either to statutory provisions or constitutional provisions has in some cases been a determining

factor. In others, and particularly where law and equity have been separately considered, the question of whether plaintiff or defendant was in possession of the realty determined the nature of the law to be applied. *Pacific Coal & Transportation Co.* v. *Pioneer Mining Co.* (C. C. A.) 205 F. 577. However, without citing further cases or extending the discussion of the principles involved, the controlling principle seems to be: If the issues are legal or the major issue legal, either party is entitled upon proper demand to a jury trial; but, if the issues are equitable or the major issues to be resolved by an application of equity, the legal issues being merely subsidiary, the action should be regarded as equitable and the rules of equity apply. *Coulson* v. *La Plant* (Mo. Sup.) 196 S. W. 1144; *Southern Pac. Land Co.* v. *Dickerson,* 188 Cal. 113, 204 P. 576; *Park* v. *Wilkinson,* 21 Utah 279, 60 P. 945.

In the case of *Donahue* v. *Meister,* supra, it is said:

"At the proper time defendant demanded a jury. * * * The plaintiff opposed the demand because the case was a proceeding in equity; and on that ground the court refused a jury."

And:

"It does not follow from the fact that the suit is brought in equity that the determination of questions purely of a legal character in relation to the title will necessarily be withdrawn from the ordinary cognizance of a court of law."

And further in the same opinion, referring to section 738 of the California Code Civ. Proc., from which section 7247 of Comp. Laws Utah 1917 was taken, discussing whether under the Code the suit was one in equity or an action at law, the court said:

"It is really a statutory action. The Code confers equitable rights so far as it grants the power to maintain the action at all, and the decree is in form equitable; but if it has to deal with ordinary common-law rights clearly cognizable in courts of law it is to that extent an action at law."

In the recent case of *Sewall* v. *Fitz Gibbon* reported in 225 App. Div. 608, 233 N. Y. S. 541, 543, the matter analogous to the question before us is stated as follows:

"The real difference between the parties concerns the nature of the action and whether the trial must be had before a jury. This is determined, not by the insertion of conclusions of law in an answer, but by the facts stated in the complaint and the denials in the answer as fixing the issue. The plaintiffs assert a title to an interest in real property less than the fee; the defendant denies it. This question of fact must be first determined by a jury before the plaintiffs may become entitled to injunctive relief."

The mere fact that a suit is one to quiet title to real property is not controlling. Generally a suit to quiet title to real property is regarded as an equitable proceeding; but because it is so regarded does not determine the nature of the issue or deprive a party of his right to a ▮ trial by jury. If the only question involved is that of title, the issue is generally legal. A suit to establish an easement is legal. *Mason* v. *Ross,* 77 N. J. Eq. 527, 77 A. 44.

We have hereinbefore referred to section 6781, Comp. Laws Utah 1917, now section 104-23-5, R. S. Utah 1933, but did not quote or comment upon the provisions, the parts of which are material to the issues here involved:

"In actions for the recovery of specific real or personal property * * * an issue of fact may be tried by a jury, unless a jury trial is waived. * * * Where in these cases there are issues both of law and fact, the issue of law must first be disposed of. * * *"

This section was taken from the California Code of Civil Procedure, § 592, and has been construed by the California court as indicated in the following cases: In the case of *Newman* v. *Duane,* 89 Cal. 597, 27 P. 66, 67, an action for possession of land, the court said:

"The appellant was clearly entitled to a jury; not only upon the principles discussed and determined in *Donahue* v. *Meister,* 88 Cal. 121, 25 P. 1096 [22 Am. St. Rep. 283], but in accordance with the specific language of section 592 of the Code of Civil Procedure, which expressly gives the right to a jury trial 'in actions for the recovery of specific real or personal property.' * * * That the plaintiff herein,

by simply framing his complaint in a particular way, could not deprive the defendant of a jury trial of the issues raised by his answer."

A similar holding and construction is found in the case of *Reiner* v. *Schroeder*, 146 Cal. 411, 80 P. 517.

The plaintiff was entitled to have the matter of whether or not he had acquired an easement over the defendants' property submitted to a jury upon his timely and proper demand. To deny him this right is reversible error.

The judgment of the trial court is reversed, and the case is remanded for a new trial. Appellant to recover costs.

ELIAS HANSEN and FOLLAND, JJ., concur.

EPHRAIM HANSON, J., dissenting.

STRAUP, Chief Justice (dissenting).

I am inclined to the view that the case mainly is one in equity. Whether a case is one at law or in equity is chiefly determined by the character of the pleadings. The plaintiff in a first count alleged that he was the owner and in possession of a particularly described parcel of land; that he since 1910, and at the commencement of the action, was also the owner of an easement or right of way over a particularly described parcel of land of the defendants; that for more than twenty years prior to the commencement of the action he and his predecessors in interest continously, uninterruptedly, openly, exclusively, adversely, and under claim of right, and with the knowledge and acquiescence and without objection of the defendants, used the right of way, describing in detail the use made thereof; that the defendants, claiming to be the exclusive owners of the roadway and of the land over which it extended, in February, 1930, without right, obstructed the right of way by building and maintaining a fence across it, thereby depriving the plaintff of the use thereof; and that the plantiff was the owner of, and entitled to the use of, the right of way for passage on foot, by truck, automobile, and by team for all general purposes.

The foregoing allegations by reference were repeated in a second count, and wherein it also was alleged that in February, 1930, and before the commencement of the action and continuously thereafter, the defendants wrongfully obstructed, and continued to obstruct, the right of way by building and maintaining a fence across it, thereby preventing the plaintiff from using and enjoying the right of way, and that the defendants threaten and intend to continue to so maintain the obstruction, to plaintiff's damage in the sum of $200.

The prayer was that the defendants be required to set forth the nature of their claim, and that all adverse claims of the defendants be determined by decree of court, and that it be adjudged and decreed that the plaintiff is the owner of, and entitled to the use of, the right of way; that the defendants be debarred and enjoined from asserting any claim in or to the right of way as against the plaintiff; that he be awarded damages in the sum of $200 and costs, and for such further and other relief as "may seem meet and just in the premises."

The answer was a general denial, putting in issue all the material allegations of the complaint, except the building and maintaining of the fence across the alleged right of way, which the defendants denied was wrongful, and alleged that they with lawful right so to do constructed and maintained the fence upon their own land in and to which plaintiff had no right, title, or interest. By way of counterclaim, the defendants further alleged that they were the owners and in possession of the parcel of land described in the complaint and over which the plaintiff claimed and asserted the right of way; that he had no right, title, or interest in or to any part of such tract of land, and that his alleged claim of a right of way was wrongful, and that he had no right, title, or interest whatsoever therein. The prayer of the defendants was a dismissal of the complaint, and that they on their counterclaim be adjudged the absolute owners of the lands over which the right of way was

claimed, that the plaintiff has no estate, right, title, or interest therein, and that he and all persons claiming under or through him be perpetually enjoined from asserting any. A reply was filed putting in issue the allegations of the counterclaim.

Thus, as is seen, the gravamen of plaintiff's action was one to quiet title or a right to an alleged ownership or interest in a right of way acquired as alleged by prescription and adverse usage over lands of the defendants; by the counterclaim, to quiet title in the defendants to the lands stripped of all asserted claims and alleged rights of the plaintiff; and each demanding injunctive relief against the other. The alleged right asserted by the plaintiff is an adverse holding under color of title or claim in and to real property or an interest therein which by this action he sought to have quieted in him. That the right so asserted by the plaintiff is an interest in lands may not be doubted. 19 C. J. 862 et seq. It is an asserted permanent interest in land of another with the right to enter at all times and enjoy it. 19 C. J. 871.

The action thus is one within the statute, Comp. Laws Utah 1917, § 7247, relating to actions to quiet title, and in accordance therewith "an action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim"; and comes within our constitutional provision, article 8, § 19, that "there shall be but one form of civil action, and law and equity may be administered in the same action." In *Wey* v. *Salt Lake City*, 35 Utah 504, 101 P. 381, we held that, by reason of the statute, the ancient jurisdiction of courts of equity with respect to suits to quiet title and to determine adverse claims was enlarged.

The matter in hand is therefore to be considered in view of the statute and of the Constitution, and is not to be determined upon principles and forms of common-law courts and rules and practice of equity prior to the Reformed Code of Procedure, and where prior thereto matters of law and equity were not administered in the same action and where

legal rights were required to be determined in a law court
and the equitable rights and relief in the Chancery Court;
nor is the matter to be considered and determined by de-
cisions of jurisdictions which still adhere to the distinction
between law courts and equity courts as it existed prior to
the adoption of the Reformed Code of Procedure first adopt-
ed in New York in 1848 and followed in nearly all of the
Western states, including Utah.

In 4 Pomeroy, Equity Jurisprudence (4th Ed.) 1396, the
author says that the equity jurisdiction to quiet title, in-
dependent of statute, was only invoked by a plaintiff in pos-
session, holding the legal title, when successive actions at
law had failed, or when many persons asserted equitable
titles against the plaintiff in possession holding the legal
or an equitable title, but that "the action has been greatly
extended by statute, and in many states is the ordinary mode
of trying disputed titles." In the section following the
author further says that "the action may be brought against
one or more claimants without regard to the interest or
title—legal or equitable—which he or the plaintiff may
hold."

The same doctrine is held in Pomeroy, Code Remedies
(5th Ed.) § 266, wherein the author says that "the action
(to quiet title) has, however, been greatly extended by stat-
ute, especially in the Western States, and is there an ordi-
nary means of trying a disputed title between two opposite
claimants," and that the possessor of land, "without waiting
for any proceeding, legal or equitable, to be instituted
against him, may take the initiative, and, by commencing
an equitable action, may compel his adversaries to come into
court, assert their titles, and have the controversy put to
rest in a single judgment." Such view follows from the fur-
ther statement of the author at section 16, wherein is con-
sidered the question of a combination by a plaintiff of legal
and equitable primary rights and of legal and equitable rem-
edies in one action, and where the author states that under
the former system a legal primary right when invaded could

only be redressed by an action at law, and that a legal judgment alone was possible, while an equitable primary right was to be redressed or protected in an equity suit and by equitable remedy, and that the union or combination of the two classes either wholly or partially in one action was unknown, unless permitted by some express statute; but the new system permitted and encouraged such a union and combination, for one of its elementary notions was that all possible disputes or controversies arising out of, or connected with, the same subject-matter or transaction, should be settled in a single judicial action. In the next section the author further states that, when the plaintiff is clothed with primary rights, both legal and equitable, growing out of the same cause of action or the same transaction, and is entitled to an equitable remedy, and also to further legal remedy based upon the supposition that the equitable relief is granted, and he sets forth in his complaint the facts which support each class of rights and which show that he is entitled to each kind of remedy, and demands a judgment awarding both species of relief, the action will be sustained to its full extent in the form thus adopted.

Pertinent also to the matter in hand is the statement in 9 Cal. Jur. § 3, that:

"Convenient as was the common-law action under the ancient practice for the determination of title to land, in this state where equity and law are administered in the same forum and under a single pleading, where an action to quiet title or to determine conflicting claims to real estate may be brought indifferently by one in or out of possession, the utility of such an action no longer exists," and that "there appears to be a growing tendency to abandon the action entirely in favor of the statutory action to quiet title."

Thus in states as here permitting a combination or union of both legal and equitable primary rights and legal and equitable remedies in one action, and where statutory actions to quiet title have been extended or enlarged to determine adverse claims to an estate or interest in real property, it follows, and as stated in 1 Pomeroy, Equity Juris-

prudence (4th Ed.) § 231, that, "where a court of equity has obtained jurisdiction over some portion or feature of a controversy, it may, and will in general, proceed to decide the whole issues, and to award complete relief, although the rights of the parties are strictly legal, and the final remedy granted is of the kind which might be conferred by a court of law." To that effect are the cases in this jurisdiction. *Kinsman* v. *Utah Gas & Coke Co.*, 53 Utah 10, 177 P. 418, *Madsen* v. *Bonneville Irrigation Dist.*, 65 Utah 571, 239 P. 781, and *Trenchard* v. *Reay* 70 Utah 19, 257 P. 1046.

I am not unmindful of statements in texts to the effect that a court of law is the proper court to determine the existence or nonexistence of an easement (7 Standard Encyc. of Procedure, 955) and that in an action for obstructing an alleged private way, whether the way is public or private, is a question for the jury (19 C. J. 1004), but it will be noticed that in the main the cases cited in support of the text are from jurisdictions where the reformed procedure and the rule of a union or combination in one action of primary rights and of legal remedies at law and of equitable relief do not prevail, or where the reformed procedure is not as fully followed as it is in many of the Western states, including Utah. The same observation may be made as to the statement in 51 C. J. 136, that:

"In many jurisdictions statutes have been enacted authorizing actions to be maintained for the determination of adverse claims and to quiet title. Such statutes are enabling acts, and the proceeding thereunder is not usually regarded as a special proceeding, but is an action, equitable in its nature, and governed by the rules pertaining to suits in equity, except where the statute directs otherwise. Under some statutes, however, the action is an action at law, while under others it may be either an equitable action or an action at law, depending on the issues involved; if the issues tendered are equitable the proceeding is one in equity, but where no equitable rights are set up by either party, or where the answer sets up an equitable defense but seeks no equitable relief, the action is one at law governed by the ordinary rules applicable to actions at law."

So, too, in 10 R. C. L. 347, that:

"While it may be incorrect to say that the determination of title to real estate is without the scope of the general jurisdiction of a court of equity, it is undoubtedly true that a court of equity will not ordinarily entertain a bill solely for the purpose of establishing the title of a party to real estate, or for the recovery of possession thereof, as these objects can generally be accomplished by an action of ejectment at law."

But that, as it seems to me, is taken care of by our constitutional provision, and by our statute relating to actions to quiet title heretofore referred to for the purpose of determining adverse claims to estate or interest in real property, and which, as has been seen, is now the ordinary mode of determining disputed titles and controversies with respect thereto. So too in reading and citing cases proper attention must also be given to the character of the issues involved, whether merely questions of law, such as trespass on real property or of an interest therein with resulting damages, without involving equity or equitable principles. But here, as has been seen, the gravamen of the action is one brought by the plaintiff against the defendants to determine adverse claims to an estate or interest in real property and to quiet title thereto and for injunctive relief, and where sufficient facts are alleged involving primary rights, both legal and equitable, arising out of the same subject-matter or transaction and entitling the plaintiff to equitable relief. I therefore am of the opinion that the court properly denied the plaintiff a trial by jury.