INTERNATIONAL HARVESTER CRED-
IT CORPORATION, Plaintiff
and Respondent,

v.

PIONEER TRACTOR AND IMPLE-
MENT, INC., Wayne A. Schoenfeld and
Dora C. Schoenfeld, Defendants and Ap-
pellants.

No. 16205.

Supreme Court of Utah.

Feb. 5, 1981.

John L. McCoy, Salt Lake City, for de-
fendants and appellants.

Philip C. Pugsley of Watkiss & Campbell,
Salt Lake City, for plaintiff and respon-
dent.

STEWART, Justice:

This action was brought by plaintiff to
recover amounts alleged to be due from
defendant Pioneer Tractor and Implement,
Inc. ("Pioneer"), a former International
Harvester dealer, and from defendants
Wayne and Dora Schoenfeld, the owners of
Pioneer and guarantors of the corporate
obligations. Defendants denied any bal-
ance due and filed a third-party complaint
against International Harvester Company.
The trial court entered judgment for plain-
tiff. On appeal defendants raise numerous
issues, including whether they were denied
a jury trial which they contend is guaran-
teed by Article I, § 10 of the Utah Constitu-
tion.

In December 1975 an agreement was en-
tered into between International Harvester
Company ("IHC") and Pioneer, establishing
Pioneer as an International Harvester farm
equipment dealer. In connection with the
establishment of the dealership, various
agreements were signed which provided for
financing arrangements with plaintiff, In-
ternational Harvester Credit Corporation
("IHCC"). Personal guarantees of the cor-
porate obligations were signed by the de-
fendants Wayne and Dora Schoenfeld. The
financing arrangements between IHCC and
Pioneer included floor plan financing for
new and used vehicles, open account financ-

ing on routine transactions with IHC, and IHC's purchasing of retail contracts on sales made by Pioneer.

Early in August 1976 representatives of IHC were notified of the intention of Pioneer to terminate the dealership. Termination procedures outlined in the dealer sales and service agreement were followed by IHC and IHCC in disposing of the parts and farm equipment inventory of Pioneer. Credits generated by the sale of Pioneer's inventory were applied to the obligations owed to IHCC. This suit was filed by IHCC to recover the remaining balance alleged to be due.

At trial there was conflicting evidence with respect to certain charges to the Pioneer account which were included in the amount claimed by IHCC. The district operations manager for IHCC, Delbert L. Homestead, testified concerning the termination procedures and the amounts claimed by IHCC to be due. Homestead was permitted, over defendants' objection, to summarize verbally the numerous bookkeeping entries and accounts underlying plaintiff's claim. The amount of the judgment was based on Homestead's testimony.

Defendants in a counterclaim against IHCC and a third-party complaint against IHC alleged that they had been misled in connection with the opening of the dealership and the subsequent ordering of inventory. The trial court found that defendants failed to meet their burden of proving actionable misconduct on the part of either IHCC or IHC and dismissed defendants' counterclaim and third-party complaint.

Defendants contend that the trial court erred with respect to the admission of evidence that established the amounts due plaintiff; that it was error to refuse to allow the amendment of defendants' answer to show a novation of the agreement with IHC; and that the trial court erred in denying the defendants a trial by jury.

In response to defendants' demand for a jury trial, plaintiff argued that defendants had no constitutional or statutory right to a trial by jury. The trial court granted plaintiff's motion to strike the jury trial demand. Plaintiff contends on appeal that the Utah Constitution guarantees a right to a jury trial only in capital cases, and that § 78–21–1, Utah Code Ann. (1953), as amended, is permissive rather than mandatory with regard to jury trials in civil cases.

The issue of whether Article I, § 10 of the Utah Constitution guarantees right to jury trial in civil cases has never been authoritatively decided by this Court. That provision of the Utah Constitution states:

> In capital cases the right of trial by jury shall remain inviolate. In courts of general jurisdiction, except in capital cases, a jury shall consist of eight jurors. In courts of inferior jurisdiction a jury shall consist of four jurors. In criminal cases the verdict shall be unanimous. In civil cases three-fourths of the jurors may find a verdict. A jury in civil cases shall be waived unless demanded.

The wording of Article I, § 10 lends itself to argument over the intended meaning as to noncapital criminal cases and civil cases.[1] A careful reading, however, of the proceedings of the constitutional convention, *Official Report of the Proceedings and Debates of the Convention*, 1895, Vol. I, Pages 258–62, 274–97, 492–95, discloses a virtually unanimous intention on the part of the framers of the Constitution to preserve a constitutional right to trial by jury in civil cases and in noncapital criminal cases. Although there was dispute in the convention over the number of jurors, and the degree of concurrence necessary for a verdict, there is repeated reference to the intention to insure the underlying right of trial by jury. The whole tenor of the discussion in the constitutional convention, the preliminary drafts, and the final language of Arti-

---

1. In *Right to Civil Jury Trial in Utah: Constitution and Statute*, 8 Utah L.Rev. 97 (1962–63), Professor Degnan surveyed the history of Utah's jury trial provisions and concluded that the constitutional clause, Article I, § 10 was ambiguous and that a constitutional right to a jury trial in civil cases was debatable since there had been no clear holding on the issue by this Court.

cle I, § 10, indicates no intention to limit the constitutional right to a jury to capital criminal cases.

The word "inviolate" as used in the first sentence was intended to provide for the continued use of the common law jury composed of twelve persons who could convict only by a unanimous verdict. Use of that term in connection with capital cases does not imply an intention not to preserve a right to a jury trial in other cases. On the contrary, the constitutional designation of the number of jurors to be used in courts of original jurisdiction and in courts of inferior jurisdiction presupposes the existence of the basic right itself. It is not plausible that the framers would mandate the number of jurors to be used in a jury, and the number of jurors required to return a verdict, without intending to secure the basic right itself.

Further support for this conclusion is found in the final sentence of Article I, § 10, which states that "[a] jury in civil cases shall be waived unless demanded." It is axiomatic that for there to be a waiver there must be an existing legal right which may be waived. *American Sav. & Loan Ass'n. v. Blomquist*, 21 Utah 2d 289, 445 P.2d 1 (1968); *Phoenix Insurance Co. v. Heath*, 90 Utah 187, 61 P.2d 308 (1936).

The jury historically has been an integral part of the Anglo-American legal system. It would require the clearest language to sustain the conclusion that there was an intention to abolish an institution so deeply rooted in our basic democratic traditions and so important in the administration of justice, not only as a buffer between the state and the sovereign citizens of the state, but also as a means for rendering justice between citizens. We refuse to give a strained meaning to the terms of our Constitution which would result in dispensing with an institution that has the sanction of the centuries.

There are those who profess disillusionment as to the competency of juries in the fact-finding process and as to the jury's ability to apply legal principles to the facts, but we are not among them. The framers' establishment of juries as a foundational part of our judicial system rested on sound propositions as to the importance of participation of lay persons in the judicial decision-making process. Juries may provide a degree of protection against an overbearing state. As a fact-finding body, they provide an important and useful alternative to a single individual's resolving disputed issues of fact. In this regard the accumulated experience and the combined cognitive powers of jurors may produce more accurate fact finding than a single person, no matter how learned in the law.

The contention that § 78–21–1 supports the conclusion that the Legislature considered there to be no constitutional right to a civil jury trial has no merit. That section provides:

Right to jury trial.—In actions for the recovery of specific real or personal property, with or without damages, or for money claimed as due upon contract or as damages for breach of contract, or for injuries, an issue of fact may be tried by a jury, unless a jury trial is waived or a reference is ordered.

The permissive term "may" is used simply to make clear that a jury trial may be waived and is not mandatory.

Finally, we note that this Court has, on a number of occasions, referred in dictum to a right to a jury trial. In *State v. Black*, Utah, 551 P.2d 518, 520 (1976), this Court referred to such a right in a noncapital criminal case. Numerous civil cases have also referred to the right of a jury trial, e. g., *Wold v. Ogden City*, 123 Utah 270, 258 P.2d 453 (1953); *Creamer v. Ogden Union Railway & Depot Co.*, 121 Utah 406, 242 P.2d 575 (1952); *Raymond v. Union Pacific Railroad Co.*, 113 Utah 26, 191 P.2d 137 (1948); *Petty v. Clark*, 102 Utah 186, 129 P.2d 568 (1942); *Norback v. Board of Directors of Church Extension Society*, 84 Utah 506, 37 P.2d 339 (1934). Indeed, the Court has, over the years, carefully guarded against intrusion by judges into jury prerogatives by such means as summary judgments, e. g., *Stickle v. Union Pacific R. Co.*, 122 Utah 477, 251 P.2d 867 (1952). Of the

Justices of this Court who have expressed a view on the subject, only Mr. Justice Wade, insofar as we have been able to determine, has been of the view that the Utah Constitution might not guarantee a right to a jury trial in civil cases. See *Valley Mortuary v. Fairbanks*, 119 Utah 204, 233, 225 P.2d 739, 754 (1950) (Wade, J., concurring and dissenting).

■ Today we squarely hold that the right of jury trial in civil cases is guaranteed by Article I, § 10 of the Utah Constitution.

■ Plaintiff also argues that the instant action is comparable to the recovery of a deficiency judgment in a mortgage foreclosure proceeding and is thus an equitable proceeding not triable to a jury. Recognizing that the present suit involves a security agreement rather than a mortgage, plaintiff points out that the term "security agreement" is a term used by the Uniform Commercial Code to embrace a variety of terms used previously, including a chattel mortgage, see § 70A–9–102(2) U.C.A. (1953), as amended. It is clear, however, that this is not an action seeking foreclosure of a lien or any other equitable relief. Indeed, plaintiff admits as much by stating that the action is for a deficiency following "an agreed procedure which in essence was a foreclosure." Since this action concerned only money damages, the action was clearly a law action. *Petty v. Clark*, 102 Utah 186, 129 P.2d 568 (1942). Cf. *Dugan v. Jones*, Utah, 615 P.2d 1239 (1980). The accounts of numerous transactions were before the court below, and the amounts due on several of the transactions were challenged by defendants. An action "to recover on an account where items and balances either have been determined or are readily determined is an action at law which sounds in contract," 1 Am.Jur.2d, *Accounts and Accounting* § 8 (1962).

Where an action is for money claimed to be due upon a contract, this Court has stated that a party is entitled to a jury trial even though the plaintiff seeks relief in the form of foreclosure, *Petty v. Clark*, 102 Utah 186, 129 P.2d 568 (1942).

This conclusion also finds support in *Dugan v. Jones*, Utah, 615 P.2d 1239 (1980), which held that in a foreclosure action, a defendant is entitled to have a jury decide legal claims raised in his counterclaim and third-party complaint that allege fraud, negligent misrepresentation, and breach of duty. *Dugan* followed the earlier case of *Valley Mortuary v. Fairbanks*, 119 Utah 204, 225 P.2d 739 (1950), in which the plaintiff had sought injunctive relief for breach of a covenant not to compete and damages for contract violations. The Court rejected the contention that there was no jury right when a claim for damages was only incidental to the injunctive relief sought, and held that a jury trial should be accorded the parties on the issues of fact raised in a legal cause of action when legal relief is sought in conjunction with equitable relief.[2]

Defendants, having made a timely demand, were entitled to a jury trial as to the existence and amount of their indebtedness to plaintiff.

Because this case must be remanded for trial by a jury, we address another point raised on appeal which may recur in the trial. The defendants contend that error was committed by the admission, over objection, of oral summaries of voluminous

2. These cases do not follow the principle relied upon in *Sweeney v. Happy Valley, Inc.*, 18 Utah 2d 113, 117, 417 P.2d 126, 129 (1966), that the trial court "may examine into the nature of the rights asserted and the remedies sought in the light of the facts of the case to ascertain which predominates; and from that determination make the appropriate order as to a jury or non-jury trial." [Footnote omitted.] See also *Norback v. Board of Directors of Church Extension Society*, 84 Utah 506, 37 P.2d 339 (1934). This principle, which had been followed in federal court decisions, was rejected by the U. S. Supreme Court in *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), and *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), which declared that litigants had a right to jury trial on legal claims raised in conjunction with equitable issues. Our present holding, which recognizes a State constitutional jury trial right in law cases, is consistent with this rule.

primary business documents, including several promissory notes. The contention is that the oral summaries violated the best evidence rule and were hearsay because there was an inadequate foundation to bring them within the business records exception.

■ An exception to the best evidence rule permits summaries of voluminous documents to be admitted in evidence in lieu of the original documents, Rule 70, Utah Rules of Evidence. The underlying documents were produced for plaintiff's inspection, thereby providing a foundation for the admission of a summary. *Sprague v. Boyles Bros. Drilling Co.*, 4 Utah 2d 344, 294 P.2d 689 (1956). However, when a summary or summaries of numerous underlying accounting or statistical documents are offered, they should be reduced to writing. Requiring summaries of voluminous statistical and accounting data to be in writing is likely to save court time, reduce the possibility of error or sharp practice, and enhance the effectiveness of a cross-examiner in testing the accuracy of the conclusions themselves. Written summaries are also likely to be of assistance to a jury and reduce the chance of error in the jurors' recollection of the evidence. Reliance on memory for numbers, which are particularly difficult to recall, will be obviated. In addition, adjustments to the damage figures which the factfinder may deem appropriate will be facilitated.

Defendant also raises the point that the underlying documentary evidence would not have been admissible in evidence because there was no testimony from a qualified person establishing the necessary predicate to invoke the business records exception to the hearsay rule. Rule 63(13), Utah Rules of Evidence provides:

Business Entries and the Like. Writings offered as memoranda or records of acts, conditions or events to prove the facts stated therein, if the judge finds that they were made in the regular course of a business at or about the time of the act, condition or event recorded, and that the sources of information from which made and the method and circumstances of their preparation were such as to indicate their trustworthiness.

■ On retrial of this matter plaintiff must provide a witness who can establish the necessary foundation for the documents on which the summaries are based and satisfy the requirements of the business records exception to the hearsay rule. *Nalder v. Kellogg Sales Co.*, 6 Utah 2d 367, 314 P.2d 350 (1957); *Sprague v. Boyles Bros. Drilling Co.*, 4 Utah 2d 344, 294 P.2d 689 (1956). Clearly summaries of documents which are allowed under the best evidence rule cannot be used as a cover for bringing inadmissible hearsay evidence into the courtroom. Making the underlying documents available for inspection by opposing counsel does not satisfy the plaintiff's burden of establishing that they fit an appropriate exception to the hearsay rule. Rules governing the admissibility of documentary summaries and of hearsay evidence must both be complied with.

Defendants also contend that the trial court erred in refusing to grant their motion, made at the close of evidence, to amend their answer pursuant to Rule 15(b), U.R.C.P., to show that a subsequent agreement between the parties constituted a novation of their contract. The proposed amendment was based on a two-part exhibit, the first page containing columns of figures in the handwriting of defendant Wayne Schoenfeld and captioned "We owe to Harvester," and the second page a security agreement prepared by Del Homestead on behalf of IHCC. Defendants contend the exhibit and testimony relating to it evidenced a waiver of a 3% handling charge.

Rule 15(b) provides for amendment to the pleadings, even over the objection of a party "when the presentation of the merits of the action will be subserved thereby." In the instant case, inasmuch as it must be remanded for a new trial, it would appear that the amendment should be allowed since it could result in no prejudice. But the issue is one to be decided by the trial court.

It is unnecessary to rule on defendants' additional claims of error by the trial court in light of our disposition of this case. These claims relate to factual issues which are within the province of the finder of fact.

Remanded for further proceedings consistent with this opinion. Costs to Appellants.

MAUGHAN, C. J., and HALL and WILKINS,* JJ., concur.

CROCKETT, Justice (concurring with comments): **

I concur with the main opinion and in supplementation of its holding on the extremely important matter of trial by jury; and in order to amplify my own views thereon, I add some comments. Insofar as I am aware, or have been able to ascertain, the procedures in the courts of this state have proceeded upon the assumption that our Constitution and decisional law assure the right of trial by jury in proper civil cases. Numerous of our decisions have so stated. I quote some examples from cases cited in the main opinion. In *Stickle v. Union Pacific R. Co.*, 122 Utah 477, 251 P.2d 867 (1952), we stated:

> Both our constitutional and statutory provisions assure trial by jury to citizens of this state.

> Courts, as final arbiters of law, could arrogate to themselves arbitrary and dangerous powers by presuming to determine questions of fact which litigants have a right to have passed upon by juries. Part of the merit of the jury system is its safeguarding against such arbitrary power in the courts. To the great credit of this country, they have been extremely reluctant to infringe upon this right, and by leaving it unimpaired have kept the administration of justice close to the people. [Citations omitted.]

In *Abdulkadir v. Western Pacific Railroad Company*, 7 Utah 2d 53, 318 P.2d 339 (1957), we stated:

We are in accord with the idea that the right of trial by jury should be scrupulously safeguarded.

It seems to me that these expressions are in harmony with the discussion and the declaration and reaffirmation of that right in the main opinion, with which I am in full agreement.

---

* WILKINS, J., concurred in the opinion prior to his resignation.

** CROCKETT, J., acted on this case prior to his retirement.