# VALLEY MORTUARY v. FAIRBANKS

No. 7350. Decided December 14, 1950. (225 P. 2d 739.)

See 30 C. J. S. Juries, Sec. 23.  Sale of business and "good will" as implying restriction against competition, see note 82 A. L. R. 1030.  See, also, 24 Am. Jur., 813 et seq.

*Christenson & Christenson,* Provo, for appellant.

*Martin M. Larson,* Salt Lake City, *Young & Sorensen,* Provo, for respondent.

WOLFE, Chief Justice.

Action by the respondent, plaintiff below, to enjoin the appellant, defendant below, from operating a funeral business in a specified area in alleged violation of an agreement between the parties, and to recover damages for alleged past infractions of the agreement. The parties will hereinafter be referred to as they appeared in the lower court.

The defendant, doing business as the Lionel Fairbanks Mortuary, entered into a written agreement with the plaintiff corporation in August of 1945 wherein the defendant sold and the plaintiff purchased for $5,500 the defendant's mortuary property and equipment in Eureka, Juab County, Utah, consisting of a house and lot, furniture, fixtures, a hearse, caskets, supplies and other miscellaneous items of personal property. In addition, the defendant agreed that for a period of twenty-five years he would not "operate a mortuary or funeral business" in Utah or Juab Counties in his own name or through a subsidiary, or third party. About a month later the defendant approached Aura C. Hatch, president and manager of the plaintiff corporation, and requested permission to construct a mortuary or funeral home in American Fork or Orem, both of which towns are in Utah County. Mr. Hatch acceded to the defendant's request and by interlineation altered the agreement to provide that for a period of twenty-five years the defendant would not "operate a mortuary or funeral business" in Provo or south of Provo in Utah County or in Juab County. Thereafter the defendant built a mortuary or funeral home in Orem, which is about seven miles north of the city limits of

Provo, and began operating it in December of 1946. The defendant picked up bodies in Provo and in Utah County south of Provo and in Juab County. He also conducted funeral services and burials in that area. All of the bodies obtained by the defendant were embalmed and prepared for burial in the defendant's mortuary or funeral home in Orem and, on occasions, funeral services were held there.

In August of 1948, the plaintiff commenced this action to enjoin future violations of the contract and to recover damages for the breach of the agreement insofar as it provides that the defendant would not "operate a mortuary or funeral business" in Provo and south of Provo in Utah County or in Juab County. The lower court construed that provision of the agreement to mean that the defendant was prohibited in the interdicted area from accepting and receiving for funeral services and burial, the bodies of persons who at the time of their deaths were residents of that area, but that the defendant by going into the interdicted area to obtain the bodies of persons who were at the time of their death residents of the area north of Provo in Utah County and thereafter transporting said bodies into the interdicted area for funeral services and burial, did not violate the terms of the agreement. The court further concluded that the defendant in conducting funeral services and burials in Provo and in Utah County south of Provo and in Juab County when he had not prepared the body for burial, violated the terms of the agreement. Damages in the amount of $750 were awarded to the plaintiff and the defendant was enjoined from further violation of the agreement.

The defendant's principal contention upon this appeal is that the court erred in its interpretation of the restrictive clause of the agreement wherein the defendant agreed not to "operate a mortuary or funeral business" in

Provo or south of Provo in Utah County or in Juab County. Defendant argues that the unambiguous meaning of that clause is nothing more than that the defendant would not operate a *physical establishment* in the interdicted area and because he has not constructed or maintained a funeral home or mortuary in the interdicted area, there is and has been no breach of the restrictive clause. Further, the defendant contends that the court erred in interpreting the agreement to include the sale of the good will of the Eureka Mortuary because express mention of the good will was not made in the agreement. In support of this latter contention, the defendant offered to prove that the tangible real and personal property sold to the defendant was worth at least as much as the total purchase price, but the court refused to allow the proof in evidence.

We agree with the trial judge that the restrictive clause of the agreement is unambiguous and with his interpretation of that clause. To give to the clause the meaning contended for by the defendant would be to give the words there employed an unwaranted and narrow import. It should be noted that the defendant agreed not to "operate a mortuary *or* funeral business." (Italics added.) While the words "operate a mortuary" might reasonably be given the meaning of maintaining a building in which bodies are prepared for burial, that narrow meaning certainly cannot reasonably be ascribed to the words, "operate a funeral business." The latter phrase includes maintaining a building in which bodies are prepared for burial, but encompasses a far wider range of activity. Given its normal meaning, operating a "funeral business" consists of carrying on those activities customarily performed by funeral directors in this state in affording complete service to those who engage their services. It includes, but is not limited to, the solicitation of business, the calling for bodies of the deceased at homes, hospitals, and else-

where, transporting the bodies to a funeral home or mortuary where they are prepared for burial, aiding the next-of-kin in the selection of a casket and burial clothes, transporting the corpse and the deceased's family to the place of the funeral service, directing and supervising such service, and then transporting the corpse to the cemetery or crematory, securing a burial permit, and numerous other services, all of which are done in affording complete and comforting service to the bereaved next-of-kin. In the instant case, the defendant testified that he usually performed the above mentioned services and that his charge included those services. True, the defendant obtained permission—evidently for no consideration—to construct a mortuary in what was originally part of the interdicted area, but he agreed with the plaintiff at the same time not to "operate a mortuary or funeral business" in Provo or south of Provo in Utah County or in Juab County. Certainly this concession by the plaintiff was only meant to allow the defendant to carry on a funeral business north of Provo in Utah County, whereas before he could not carry it on anywhere in Utah County. There is no reason for construing a favor and a concession into an admission that the parties originally meant only to prohibit the defendant from operating a physical establishment in the proscribed territory.

In *Elkins* v. *Barclay*, 243 Ky. 144, 47 S. W. 2d 945, the defendant sold to the plaintiff the equipment and supplies used by him in the undertaking business and agreed that he "would not directly or indirectly, himself, or in the employment of another, engage in the business of undertaker and embalmer in Carlisle county". About a year later the defendant commenced to engage in the undertaking business in an adjoining county. He sold and delivered caskets to residents of Carlisle County and performed in that county the necessary and required services incident to, and commonly necessary in, the burial of deceased persons, furnished the hearse with which the bodies were transported to

the cemetery, directed the burial, and signed the death certificates as the undertaker in charge. The Court of Appeals affirmed the judgment of the trial court holding that such acts on the part of the defendant were in violation of the agreement and granted an injunction against further violations.

Nor did the trial judge err in finding that the defendant by the agreement sold to the plaintiff the good will of his business in Eureka. It is clear from the agreement that the property conveyed by the defendant was all of the property used by him in carrying on his business ■ as a funeral director in that town. In *Wall* v. *Chapman*, 84 Okl. 114, 202 P. 303, it was held that "The obvious intent of a contract for the sale of all tools, furniture, and equipment of the office of a dentist to another dentist, coupled with an agreement by the seller not to enter into a like business in the same town for a period of five years, is to sell the good will of the business." *Herrington* v. *Hackler*, 181 Okl. 396, 74 P. 2d 388. Similarly, it is stated in 24 Am. Jur., Sec. 13, p. 810, that "where a person sells a business and in connection therewith agrees not to engage in the same business in the same place, the obvious intent is to sell the good will of the business; and where a contract for the complete sale of a business omits to mention the good will, the presumption is that it was the intention of the parties that the good will pass with the other assets. This necessarily results from the fact that the good will cannot exist except in connection with the business." Thus the fact that in the agreement express mention was not made of the good will does not preclude it from passing by the agreement. The restrictive covenant not to "operate a mortuary or funeral business" in the interdicted area was doubtless the parties' way of expressing their intent that the good will be transferred to the plaintiff along with the tangible assets. Furthermore, the good will of the defendant's former business may not have extended to the bounds of the interdicted area.

If that were true, the restrictive covenant may have been inserted in the agreement to exclude competition by the defendant in a more wide-spread area than would have been excluded by the sale of the good will without the addition of the restrictive clause. It appears from the record that the plaintiff maintained funeral homes in Provo, Payson and Spanish Fork, the latter two towns lying south of Provo in Utah County. The plaintiff may have desired by the restrictive covenant to insulate these establishments from competition by the defendant.

The defendant next contends that the plaintiff in his complaint has not stated facts sufficient to constitute a cause of action entitling him to equitable relief. Specifically, he argues that there is no statement of facts showing that the building and equipment in Eureka were owned by the plaintiff at the time this action was commenced, that the legal remedy of damages is inadequate, or that there is any necessity for an injunction. This contention must fail. Clearly, the plaintiff's complaint states two causes of action—one entitling him to legal relief and the other entitling him to equitable relief. The complaint states that shortly after the execution of the agreement between the parties, the defendant began operating a mortuary or funeral business in the interdicted area in his own name "in that he solicits and procures customers in those places and holds funerals there," and that by reason of the breach of the contract the plaintiff's business has been damaged in the sum of $20,000. In the prayer of the complaint, the plaintiff seeks both an injunction and damages. Admittedly there is no specific allegation that the legal remedy of damages is inadequate or that an injunction must be granted in order to give the plaintiff adequate relief. Such allegations are not needed, however, because the pleader by alleging that he has no adequate remedy at law, adds nothing to his pleading, but merely states his conclusions. 3 Bancroft, Code Pleading, Sec. 1548. The de-

fendant concedes that the inadequacy of legal relief need not be expressly alleged, but that the plaintiff must state facts from which the court can deduct that the legal remedies available are inadequate. The statement in the complaint that shortly after the execution of the agreement the defendant began operating a mortuary or funeral business in the interdicted area in that he "solicits and procures" customers there, could mean nothing less than that the defendant has and is soliciting and procuring business, and in all probability will continue to solicit and procure business in the future, unless his conduct is restrained. Certainly the court could deduce from this allegation that the plaintiff's legal remedy —damages—is wholly inadequate to protect his rights under the contract. In fact, injunction in cases of threatened recurring torts or breaches of a continuing contract was traditionally handled by equity because the very nature of one type of equity interposition was to furnish a preventative remedy. Thus the court naturally would deduce from the nature of the allegation of threatened repetition of the breach that injunctive relief was necessary if the plaintiff was to fully realize his rights under the contract. Furthermore, where an established business has been sold with its good will and there is a valid covenant not to compete in a certain territory, the breach of such a covenant entitles the injured party to injunctive relief practically as a matter of course. *Peterson* v. *Johnson Nut Co.,* 204 Minn. 300, 283 N. W. 561; *Brown* v. *Kling,* 101 Cal. 295, 35 P. 995; *Moore* v. *Duggan Abstract Co.,* Tex. Civ. App., 154 S. W. 2d 519.

A more serious contention made by the defendant is that the trial court erred in denying it a jury trial. While the defendant has not argued in its brief upon which issue or issues a jury trial should have been granted, it appears that the only question of fact in the case which was disputed was the amount of damages suffered by the plaintiff as a result of the defendant's breach of the contract. The court in

denying the plaintiff a jury trial expressed its reasons therefor as follows:

"The Court conceives in light of the prayer for the relief the paramount object of the proceeding is injunctive, that there is an allegation of violation which presently continues, and that's supported by the reference to the answer of the defendant, claiming a right to that, because to enforce the plaintiff's interpretation of the contract would result in unlawful restraint of trade; that in view of such matter, the question is primarily equitable, that the damage action or the damage claimed in this respect, to the matter, is *incidental to the primary relief; it being primarily equitable in the* Court's mind, the parties are not entitled as a right to a jury to try the cause."

Section 104—23—5, Utah Code Annotated 1943, as amended by Chap. 25, Laws of Utah 1945, enumerating the civil actions in which a trial by jury may be had, provides:

"In actions for the recovery of specific real or personal property, with or without damages, or for money claimed as due upon a contract *or as damages for breach of contract,* or for injuries, an issue of fact may be tried by a jury, unless a jury trial is waived or a reference is ordered as provided in this code. Where in these cases there are issues of both law and fact, the issues of law must first be disposed of. In other cases issues of fact must be tried by the court, subject to its power to order any such issue to be tried by a jury or referred to a referee as provided in this code. Included within the equitable suits in which a jury shall be only advisory to the court shall be suits to foreclose mortgages and other liens." (Italics added.)

Were the plaintiff seeking only damages for breach of contract in this action, it is clear that under the above statutes, the parties would be entitled upon demand to a jury trial on issues of fact involved in such action. However, the plaintiff, alleging that the defendant has violated the terms of the contract entered into between the parties, seeks both damages and an injunction. The question arises whether there is a right to a trial by jury on the issues of fact arising in the action for damages for breach of contract as distinguished from issues of fact arising in the action for the injunction. As heretofore stated, the trial judge denied the defendant the right to a jury trial on any and all issues, the court taking the view that the paramount object of the plaintiff's action was to secure an injunction, that the

claim for damages was only incidental to the injunctive relief sought, and that therefore there was no right to a jury trial on any issue.

Sec. 104—23—5, U. C. A. 1943, with the exception of the last sentence which was added by the legislature in 1945, is identical with section 592 of the Code of Civil Procedure of California. In California, the question of whether there is a right to a trial by jury on the issue of damages when equitable relief is also prayed for in the same action, has arisen many times. One of the earliest cases in that state was *Hughes* v. *Dunlap*, 91 Cal. 385, 27 P. 642, 643, where the plaintiff brought an action to recover damages for and to secure an injunction against the repeated trespasses of the defendant upon his lands. The Supreme Court in holding that at least as to the issue of damages, the plaintiff was entitled to a jury trial, said:

"It has long since been held that under our system a legal and equitable remedy may be sought in the same action; but each remedy must be governed by the same law that would apply to it if the other remedy had not also been asked for. An action to recover damages for past trespasses is as clearly a legal remedy as any that could be named, and it is an action in which a party cannot be deprived of a jury trial."

In 1919, this same question presented itself again in *Farrell* v. *City of Ontario*, 39 Cal. App. 351, 178 P. 740, 741. There the plaintiff sought to recover damages for and to enjoin the defendant from diverting water onto his lands. The court, following the rule of *Hughes* v. *Dunlap*, upheld the plaintiff's contention that as to the issue of damages, at least, he was entitled to a jury trial, but pointed out in a well considered opinion that there were two divergent lines of decisions in that state on that question, the one line apparently ignoring the other. One line of decisions is represented by *Hughes* v. *Dunlap*, where as heretofore stated, the court held that as to the issue of damages at least, the parties were entitled to a jury trial and that the verdict of the jury was binding upon the court. The other line of cases

is illustrated by *McLaughlin* v. *Del Re,* 64 Cal. 472, 2 P. 244, holding that

"in such case the prayer for damages is but incidental to the principal relief sought, which is of equitable cognizance, and that, therefore, the verdict of a jury thereon is merely advisory and may be disregarded by the trial judge upon whom rests the responsibility of finding the facts."

The court in the Farrell case, taking the position that the decision in *Hughes* v. *Dunlap* was based upon the sounder reasoning and hence choosing to follow it, stated:

"According to the allegations of his complaint, plaintiff had two rights of action and was entitled to two remedies, of which he might pursue either or both at his election, the legal remedy of damages for past injuries suffered and the equitable remedy of injunction to prevent their recurrence in the future. He might have prosecuted separate actions for these two remedies concurrently. In that case the facts alleged in the two actions would have been the same, except that in the action at law he would have alleged the money value of the injuries suffered and in the suit in equity he would have alleged the facts showing a threat of future repetitions thereof. Under those circumstances it will be conceded that the plaintiff would have been entitled as of right to a trial by jury of the legal issues as to damages. Instead of doing this, he accepted the invitation held out to him by our laws and joined his two actions in one. He should not be held to have thereby forfeited his right to a jury trial of the legal issues, unless the reason for so holding is clearly apparent."

The court in the Farrell case declared that the rule of *McLaughlin* v. *Del Re, supra,* while finding some support in the decisions of New York and Iowa, is an "unnecessary and unwarranted application of a recognized doctrine of equity jurisprudence, to wit, the rule 'that when a court of equity has jurisdiction over a cause for any purpose, it may retain the cause for all purposes and proceed to a final determination of all the matters at issue.'" With reference to that rule of equity, the court further observed:

"This rule, both in its origin and its application wherever the jurisdiction at law and in equity was vested in separate tribunals, had for its reason and its purpose the avoidance of a multiplicity of actions. Where, under the 'reformed procedure,' issues at law and in equity may be tried before the same tribunal and in the same action, this reason ceases to exist. There is no occasion in this state for the application of the rule that equity, once taking jurisdiction, will retain it for the purpose of

disposing of the entire case, because here the court may dispose of the entire case without the necessity of trying it as a case wholly of equitable cognizance. Here the court, having jurisdiction, may hear and determine the equitable issues according to the rules of equity, and the legal issues in accordance with the rules of law, both in the same action.

"* * * it would seem that where, as under our procedure, parties are permitted to submit both their legal rights and their equitable rights to the same tribunal for adjudication at the same time, the right to a jury trial with respect to the former, which was adequately safeguarded under the old system, should be equally respected under the new.

"* * * If the jurisdictions in law and equity were here separately vested, it might well be held that the' plaintiff, by filing in equity a complaint such as is here presented, had thereby elected to submit all the issues for determination by the court, and thereby waived his right to a jury trial on the legal issues; but where, as here, all such issues may be tried in the one action, no reason for such holding appears."

Twenty years later (1939), the Supreme Court of California in *Pacific Western Oil Co.* v. *Bern Oil Co.*, 13 Cal. 2d 60, 87 P. 2d 1045, approved the rule of the Farrell case, stating that the argument and citation of authorities in that opinion were unanswerable and held that the rule of that case should be followed by the courts of that state in actions wherein both legal and equitable remedies are the subject of the action. The highest court of California again expressed approval of the rule of the Farrell case in *Connell* v. *Bowes*, 19 Cal. 2d 870, 123 P. 2d 456, where the plaintiff commenced an action for specific performance of an option to sell stock, for an accounting, and for an injunction. The defendant filed an answer and cross-complaint seeking damages. The court stated that

"It is now established in this state * * * that if a complaint states two complete rights of action, one legal and one equitable, a jury trial may be obtained upon the issues raised by the legal cause,"

and extended the rule in its application to cases where the complaint pleads a purely equitable cause of action and the defendant cross-complains for legal relief, and held that under such facts the parties are entitled to a jury trial on the issues raised by the legal cause of action.

"It does not seem desirable to force a party to give up his right to a jury trial as an alternative to utilizing the advantages of modern code procedure designed to permit settlement of various issues in a single action,"

the court declared. The Connell case further held that in actions in which the plaintiff seeks equitable relief and the defendant cross-complains for legal relief, the equitable issues should be tried first and then, if any legal issues remain, a jury may be called to try them, citing *Angus* v. *Craven*, 132 Cal. 691, 64 P. 1091; *Thomson* v. *Thomson*, 7 Cal. 2d 671, 62 P. 2d 358, 117 A.L.R. 1. For additional illustrations of the application of the California rule see *Hutchason* v. *Marks*, 54 Cal. App. 2d 113, 128 P. 2d 573; *Peterson* v. *Peterson*, 74 Cal. App. 2d 312, 168 P. 2d 474; *Robinson* v. *Puls*, 28 Cal. 2d 664, 171 P. 2d 430.

California has not limited the application of its rule to actions in which relief is granted in addition to equitable relief, but has also applied it in cases wherein legal relief is awarded in lieu of equitable relief. For example, in *Farnsworth* v. *Hunter*, 11 Cal. 2d 27, 77 P. 2d 840, the plaintiff prayed for specific performance of a contract to purchase realty, but in the event the court found that he was *not entitled* to that relief, he prayed for damages. The court held that the plaintiff was not entitled to specific performance because of the inadequacy of the consideration, but awarded him damages suffered by reason of the breach of the contract. The plaintiff had waived his right to a trial by jury, but had he not done so, the court indicated, he would have been entitled to a jury to assess the damages. That case, however, was carefully limited to its facts by *Crouser* v. *Boice*, 51 Cal. App. 2d 198, 124 P. 2d 358, 361, where the plaintiffs prayed for specific performance of a contract to purchase realty, but in the event the defendants *could not perform* and complete the contract, the plaintiffs sought damages. Specific performance of the contract was granted but it was also provided in the decree that if the defendants were unable to complete performance, the plain-

tiffs were entitled to damages in a specified amount. The court held that the parties were not entitled to a jury on the issue of damages, giving as its reason:

"The issue of damages was presented not as an alternative to specific performance in the event the plaintiffs were unable to prove a case entitling them to that relief, but was presented only as an alternative in the event that, because of some act of defendants, they were unable or refused to comply with the specific performance decree. In other words, this is not a case where the plaintiffs were granted damages because they failed to prove that they were entitled to specific performance. If it were, it would be obvious that defendants would have been entitled to a jury trial as a matter of right on the legal issue of damages. Thus, for example, where the plaintiff's proof fails to show that the consideration is fair and equitable, the plaintiffs are not entitled to the equitable relief of specific performance, but the trial court may grant the legal relief of damages, in which event the parties are entitled as of right, upon demand, to a jury trial. *Farnsworth* v. *Hunter,* supra. The present case is one where no legal issues at all were presented by the pleadings. The court found that plaintiffs had proved every element of a cause of action for specific performance, and that the plaintiffs were entitled to that equitable relief. Damages were granted only in the event defendants were unable or refused to convey. In such event, the authorities are practically uniform that damages are granted not in the exercise of a legal jurisdiction, but in the exercise of the equity jurisdiction of the court."

This subtle distinction between the facts of *Farnsworth* v. *Hunter and Crouser* v. *Boice* was recognized and followed in *Hutchason* v. *Marks,* 54 Cal. App. 2d 113, 128 P. 2d 573, 575, where the plaintiff sought recovery of a note and mortgage, but in the event they were disposed of, he asked for a judgment for their value. The court observed,

"This alternative demand [for damages] is not predicated on an alternative and legal cause of action, but is simply for alternative relief based on the equitable theory of recission and presents a case which appears to be similar to that which is clearly and concisely delineated and disposed of * * * in *Crouser* v. *Boice.*"

A study of the Utah cases in which there has arisen the question of whether there is a right to a jury trial on any issues in an action in which both equitable and legal relief is sought, and in actions in which equitable relief is denied, but legal relief granted in lieu thereof, reveals that this court has not always as jealously guarded the right to trial

by jury as have the courts in California.

One of the earliest cases in this state discussing that question was *State ex rel. Hansen* v. *Hart*, 26 Utah 229, 72 P. 938, 939, where the plaintiff sought to enjoin the defendants from trespassing over his lands and to recover damages for trespasses previously committed by them. The defendants denied the plaintiff's allegations and asserted that for over twenty years there had been a public highway over the premises and that they had entered onto the lands only as was necessary in traveling on the highway. This court held that "Under the issues presented by the pleadings the action is one of trespass *quare clausum fregit*, and as such is a law action, and, although in the action application is made to the court to exercise its equity powers in granting injunctive relief, this is not sufficient to deprive either party of his rights to have the legal issues submitted to a jury." Clearly that case is in harmony with the California rule as enunciated in *Pacific Western Oil Co.* v. *Bern Oil Co., supra*.

In a succession of three cases involving actions to enjoin alleged nuisances, we discussed the right to a jury trial on the issue of damages when the same are awarded in lieu of injunctive relief, as was done in *Farnsworth* v. *Hunter, supra*. In the first case, *Kinsman* v. *Utah Gas & Coke Co.*, 53 Utah 10, 177 P. 418, fifty-nine persons joined as plaintiffs in an action to enjoin the operation of a gas plant. The trial court found that the plant was a nuisance and granted the injunctive relief prayed for. Upon appeal this court sustained the findings of the lower court, but held that the injunction should not be granted because of the delay on the part of the plaintiffs in bringing their suit, and that the plaintiffs should have money damages in substitution for the injunction, which would have been issued had they been free from laches. However, the court indicated that there was no right to a jury trial on the issue of damages, but that

the trial court having acquired jurisdiction of the parties and the subject matter, would retain that jurisdiction and award damages in the exercise of its equity powers.

Express approval of the Kinsman case was given by this court in *Wasatch Oil Refining Co.*, v. *Wade, Judge*, 92 Utah 50, 63 P. 2d 1070, 1078. There the plaintiff refining company contended that when in an action brought to enjoin an alleged nuisance, the court finds that no nuisance exists, the court loses jurisdiction of the cause and cannot allow the parties to amend their pleadings and award the plaintiff damages. The court held that the contention of the refining company was premature inasmuch as the trial court had not as yet made any findings of fact and thus it was not known what he would find in regard to the existence of a nuisance. However, we indicated by way of dicta that if the trial court found that no nuisance existed, there would be no basis for the continuing jurisdiction of a court of equity. Said the court:

"Where, as in this State, legal and equitable remedies may be granted by the same court if, *after failure of proof* to support the allegations in the complaint entitling plaintiff to equitable relief, enough remains in the complaint to make out a cause of action at law, the court will be justified in retaining the cause for final disposition, but the case should be tried as a law action and either party making timely and proper demand for a jury would be entitled thereto." (Italics added.)

But the court further observed, citing the Kinsman case in support thereof:

"Where a case is brought in equity, and the proved facts *support* the allegations of the complaint entitling the plaintiff to equitable relief, the court having obtained jurisdiction over the cause will, in the exercise of its equity jurisdiction, proceed to decide the whole issues and award complete relief, although the rights of the parties may be strictly legal. That is to say, damages will be awarded in substitution for or in addition to equitable relief." (Italics added.)

And it is further stated that when damages are awarded in substitution for or in addition to equitable relief, there is no right to have them assessed by a jury.

The decision of this court in the third case, *Ludlow* v. *Colorado Animal By-Products Co.*, 104 Utah 221, 137 P. 2d 347, 353, reveals a departure from the rule applied in the *Kinsman* case and reaffirmed in the *Wasatch Oil* case. In the *Ludlow* case suit was instituted to enjoin the operation of a rendering plant. The trial court found that the plant constituted a nuisance but, as in the *Kinsman* case, refused to enjoin its operation because of the laches of the plaintiffs in seeking injunctive relief. However, the trial court allowed the plaintiffs to file supplemental pleadings to obtain damages for the depreciation of their properties by reason of the nuisance. In upholding the lower court in awarding damages to the plaintiffs, this court speaking through Mr. Justice McDONOUGH, said:

"In an equity action where the prayer is for both specific and general relief, such as for an injunction and 'any further or other relief which the court shall deem appropriate in the premises,' having once acquired jurisdiction of the parties and the subject matter, the court will retain that jurisdiction until full justice has been achieved between the parties, even if equitable relief is denied. This is especially true in this state, where we have only one form of civil action, and various kinds of relief can be administered in the same action. Where a number of persons join in an action to restrain the operation of a plant or business as a nuisance, and also request general relief, if for some cause equitable relief is denied although the court finds there is actually a recurring nuisance; notwithstanding the nuisance would warrant each plaintiff in maintaining a separate action for damages for depreciation of his property, and the only separate issue is the amount of compensation due each plaintiff in lieu of injunction, it is proper for the court to allow plaintiffs so joined in the action to amend their pleadings or file supplemental pleadings and proceed to trial for determination of what compensation each plaintiff is entitled to receive, without requiring them to institute separate actions. *Kinsman* v. *Utah Gas & Coke Co.*, supra, and *Wasatch Oil Refining Co.* v. *Wade*, supra."

The significant feature, however, about the *Ludlow* case is the statement by the court that had the defendant not failed to timely demand a jury trial, it would have been proper to have had the damages determined by a jury, citing the *Wasatch Oil* case in support thereof!

Patently, the *Ludlow* case insofar as the question of

whether the parties were entitled to a jury trial on the issue of damages is concerned, expresses a rule entirely contrary to the rule followed by this court in the *Kinsman* case and given approval in the *Wasatch Oil* case. The citation of the *Wasatch Oil* case in *Ludlow* v. *Colorado Animal By-Products Co.* in support of the statement in the latter case that had the defendant made a timely demand, he would have been entitled to a jury trial on the issue of damages is apparently erroneous.

When, in this state, a plaintiff in his complaint states two complete causes of action—one entitling him to equitable relief and the other entitling him to legal relief—as the plaintiff has done in the instant case, or when in an action commenced by a plaintiff to obtain equitable relief, the same is denied him but the court allows him to amend his complaint to state a cause of action entitling him to legal relief, such as was done in the *Kinsman* and *Ludlow* cases, there is no persuasive reason why either party should not be entitled, upon timely demand, to a jury to determine the issues of fact raised by the legal causes of action. In the *Kinsman* case [53 Utah 10, 177 P. 423.], in holding that the damages should be fixed by the court in the exercise of its equity jurisdiction, we relied upon the principle of equity that "where a court of equity has obtained jurisdiction over some portion or feature of a controversy, it may, and will in general, proceed to decide the whole issues, and to award complete relief, although the rights of the parties are strictly legal, and the final remedy granted is of the kind which might be conferred by a court of law," citing Pom. Eq. Jur. 3rd Ed. p. 231. In addition, we stated that because in this state there is but one form of civil action and both law and equity may be administered in the same action, we would not encourage a multiplicity of suits by dismissing the plaintiffs' present action and sending them to their actions at law, thereby compelling them to file new complaints based upon and containing the same facts as

alleged in their complaint before the court, and present the new complaints to the same court then having cognizance of the suit. While the determination on the part of this court to prevent a multiplicity of suits by giving effect to the Constitutional provisions that both legal and equitable relief may be administered in the same action is commendable, it affords no basis for refusing the parties the right to have a jury assess the damages suffered by the several plaintiffs. After the court had in its discretion refused to grant the injunction, but allowed the plaintiffs to file supplemental pleadings entitling them to damages in lieu thereof, a jury could have been impaneled in that very suit to determine the amount of damages, just as if the action had originally been brought for the sole purpose of obtaining damages. Nor does the rule that a court of equity once having obtained jurisdiction of a cause will award complete relief although the relief may be legal in nature, afford a satisfactory reason for denying the parties a jury trial on the issue of damages. As was pointed out in *Farrell* v. *City of Ontario,* supra [39 Cal. App. 351, 178 P. 740, 741] that rule of equity had its origin in a judicial system in which law and equity were administered in different tribunals and had for its reason and purpose the avoidance of a multiplicity of actions. However, as the court there noted, when as in this state, "issues of law and equity may be tried before the same tribunal and in the same action, this reason ceases to exist."

Likewise, in actions in this state in which the plaintiff unites in his complaint two complete causes of action, in one of which he seeks equitable relief and legal relief in the other, sound reasoning compels us to the conclusion that the rule adopted by the Supreme Court of California in *Pacific Western Oil Co.* v. *Bern Oil Co.,* supra [13 Cal. 2d 60, 87 P. 2d 1045] should be observed in this state. That is, a jury trial should be accorded the parties on the issues of fact raised in the legal cause of action. The

reasons given by the court in *Farrell* v. *City of Ontario,* supra, in support of this rule are equally forceful when applied to the facts of the instant case: "plaintiff had two rights of action and was entitled to two remedies, of which he might pursue either or both at his election, the legal remedy of damages for past injuries suffered and the equitable remedy of injunction to prevent their recurrence in the future. He might have prosecuted separate actions for these two remedies concurrently. In that case the facts alleged in the two actions would have been the same, except that in the action at law he would have alleged the money value of the injuries suffered and in the suit in equity he would have alleged the facts showing a threat of future repetitions thereof. Under those circumstances it will be conceded that the plaintiff would have been entitled as of right to a trial by jury of the legal issues as to damages. Instead of doing this, he accepted the invitation held out to him by our laws and joined his two actions in one. He should not be held to have thereby forfeited his right to a jury trial of the legal issues, unless the reason for so holding is clearly apparent." The Supreme Court of Oklahoma in *Garrett* v. *Kennedy,* 193 Okl. 605, 145 P. 2d 407, stated that the established practice in that state is in conformity with the California rule.

Thus we conclude that the court below erred in not according to the defendant, upon his demand, a jury trial on the issue of damages. As has been seen, the trial judge denied the defendant the right to a jury trial on any and all issues on the ground that the paramount ■ object of the plaintiff's action was to secure an injunction and that the claim for damages was but incidental to the injunctive relief sought. In so ruling, the court apparently relied upon *Norback* v. *Board of Directors of Church Extension Society,* 84 Utah 506, 37 P. 2d 339, 345, where the rule was laid down that "If the issues are legal or the major issue legal, either party is entitled upon proper

demand to a jury trial; but, if the issues are equitable or the major issues to be resolved by an application of equity, the legal issues being merely subsidiary, the action should be regarded as equitable and the rules of equity apply." In that case suit was brought by the plaintiff to establish a claimed easement based upon an alleged prescriptive user, for an order enjoining the defendant from asserting a claim as against the plaintiff thereto, and for damages. The court held that the primary purpose of the suit was to establish an easement; that a suit to establish an easement by prescription is legal; that the right of injunctive relief could not come into existence until the easement had been established; that the court could grant or refuse to grant the auxiliary relief of restraining interference with the easement after the easement had been found to exist; and that therefore the parties were entitled to have the matter of whether he had acquired an easement by prescription submitted to a jury.

Appraised in light of the California rule, the *Norback* case is apparently correct in result, but the rule there laid down as to when litigants are entitled to a trial by jury, which we have quoted above cannot be reconciled with the California rule which we have approved and adopted in this opinion. There may be certain types of cases, although none occur to us now, in which the issues of fact in the legal cause of action are so intertwined with the issues of fact in the equitable cause of action that they cannot be separated for the purpose of trial by jury. Only then would it seem that the court should determine whether the major issue or issues are legal or equitable and grant or deny a jury trial accordingly. Otherwise the parties should be entitled to a jury trial on the issues of fact in the legal cause of action.

We cannot sustain the plaintiff's contention that the defendant's demand for a jury trial was defective because

it was general and failed to specify the issues upon which a jury trial was desired. The Supreme Court of California in *Robinson* v. *Puls*, 28 Cal. 2d 664, 171 P. 2d 430, amply answered this contention by pointing out that the Constitution of that state vested in the legislature the sole power of declaring what should constitute a waiver of trial by jury and because the legislature had not provided that a jury is waived by the failure to specify in the demand the issues to be tried to the jury, the courts could not properly deny a party a jury trial upon that ground. Similarly in this state, Sec. 10, Art. I of our Constitution provides that in civil cases a jury shall be waived unless demanded. The legislature in Sec. 104—23—6, Utah Code Annotated, 1943, which was in effect at the time of the trial below, has provided how, when and where the demand must be made, but in doing so, has not seen fit to require the parties to specify the issues upon which they desire a jury trial.

The judgment below is reversed and a new trial is ordered upon the issue of damages suffered by the plaintiff by reason of the breach of the restrictive covenant, the judgment enjoining further breaches of the contract to stand. Each party to bear its own costs.

PRATT, C. J., and LATIMER and McDONOUGH, JJ., concur.

WADE, Justice (concurring in part—dissenting in part).

I agree that by the sale of the real estate and all the equipment used in carrying on the Mortuary business in Eureka, appellant sold his business to respondent. See *Shafer* v. *Sloan*, 3 Cal. App. 335, 85 P. 162. When a business is sold and there is an agreement by the seller not to engage in the same business in the same place and no mention is made of the good will, it is presumed that it was the intention of the parties to pass the good will along with the other assets. This is so because of the fact that good will cannot exist

apart from the business with which it is connected. See 24 Am. Jur. page 810, Sec. 13; *Shafer* v. *Sloan,* supra; *Mahlstedt* v. *Fugit,* 79 Cal. App. 2d 562, 180 P. 2d 777; *Wall* v. *Chapman,* 84 Okl. 114, 202 P. 303; and *Herrington* v. *Hackler,* 181 Okl. 396, 74 P. 2d 388.

Respondent because of the implied sale of the business got whatever good will attached to appellant's establishment in Eureka, which in its broadest sense means, according to Judge Storey's definition as stated in 24 Am. Jur. page 803,

"the advantage or benefit which is acquired by an establishment beyond the mere value of the capital stocks, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual. customers on account of its local position, or common celebrity, or reputation for skill, or affluence, or punctuality, or from other accidental circumstances or necessities, or even from partialities or prejudices."

Therefore, when appellant competed for the business in Eureka which would naturally and normally have gone to the establishment which was sold, he breached the agreement, and if such good will extended into Provo and south of Provo in Utah and Juab Counties because the business which he did there came as a result of the good will of his establishment in Eureka, he breached the contract by competing for business there. However, there is no evidence in the record before us that the good will of the establishment in Eureka extended to Provo and south of Provo, in Utah and Juab Counties and for that reason I would remit the case to the District Court so that evidence may be taken and a finding made as to that fact.

I do not agree that without a showing that such business was a part of the good will of the Eureka business, we can conclude from the language of the contract alone that appellant committed a breach thereof by picking up bodies of persons who were residents of the interdicted area or by holding funeral services within that area. As stated in the

note on restrictive covenants in 87 A. L. R. page 329:

"Whether a covenant not to engage in business or practice professionally within a specified area is violated by dealing or attempts to deal with persons residing within such area from an establishment outside depends upon the construction of the covenant in light of the relation of the parties."

In the instant case the sale of the business and the good will was by implication. There is nothing in the contract to indicate that respondent paid any special consideration for it. In fact, appellant offered to prove that the physical properties sold were worth at least as much as the entire consideration paid. Since what respondent got by his contract was the benefit which inured to appellant's establishment the only reasonable interpretation of the restrictive clause is that when the parties to the contract agreed that appellant would not operate a mortuary or funeral business in the interdicted areas that they meant that he would not operate a funeral establishment within that area. That such was the meaning is borne out of the actions of both parties subsequent to the execution of the agreement when appellant sought permission to build a mortuary in Orem, Utah, which is a few miles north of Provo, Utah, and respondent granted such permission. In these negotiations they were considering only the place where such a business might be established not where incidental services might be rendered as a part of that business. In negotiating and making this change the parties clearly had in mind to allow appellant to establish a mortuary place of business in Orem rather than agreeing to allow him to pick up a body there. This shows that they had in mind a restriction on the place where he could establish a place of business not the place where he could incidentally go to perform some service pertaining to mortuary or funeral business. Respondent conceded that appellant could enter the interdicted areas to receive a body of a non-resident. This further shows that it was not intended to exclude appellant from all mortuary business there.

A further element which makes it clear that the parties had in mind only that no establishments should be opened or built by appellant in the interdicted areas when they spoke of mortuary or funeral business is that Sec. 79—7—16, U. C. A. 1943, provides that the *"business* of a funeral director must be conducted and engaged in at a fixed place or establishment; * * *." (Emphasis ours.) The only reasonable interpretation of the meaning of the words "mortuary or funeral business" as used in this contract in the light of this statute is that the parties must have had in mind that an undertaker could not legally do business except from a fixed place or establishment and when appellant contracted not to operate a funeral or mortuary business in the interdicted areas he agreed not to operate any establishments there in pursuance of his work as an undertaker.

In view of the fact that there was no express sale of the business of appellant but only a presumption that the business was sold because all of the physical properties pertaining to the business were sold and because of this presumption and the fact that the contract of sale contained a restraining clause, that the good will went with the sale of the business, it is apparent that no extra consideration was paid to appellant for such good will and it therefore does not violate one's sense of good faith and fair dealing in allowing appellant to get what business he can from the interdicted areas as long as it is not business which is obtained because of his previous operation of the Eureka business.

I agree that the court erred in refusing a jury trial on the issues of fact necessary to decide whether there was a breach of contract and if so the amount of damages, if any, suffered therefrom. Not, however, because this kind of action would have been maintainable in a court of law when law and equity were administered by separate courts, but because Section 104—23—5, U. C. A. 1943 expressly so pro-

vides in the following language:

"*In actions* for the recovery of specific real or personal property, with or without damages, or *for money claimed* as due upon contract or *as damages for breach of contract,* or for injuries, *an issue of fact may be tried by a jury,* unless a jury trial is waived. * * *." (I have emphasized the words which deal directly with this question.)

This section fixes the right of a jury trial on all issues of fact involved in determining whether any of the kinds of relief therein specified should be granted and if so the amount and extent thereof. Under its provisions the right to such trial does not depend on whether the issues presented are legal or equitable, nor on whether that kind of action would have been maintainable in a law court under the dual court system. The test under this statute is whether the kind of relief specified therein is sought in the action. If such relief is sought, then a jury trial is granted on all issues of fact involving such relief but it does not require a jury trial on issues of fact involved in the granting of other kinds of relief which is sought in the same action. Prior to the 1945 amendment, this statute apparently was intended to give the right of a jury trial on all issues of fact involved in granting legal as distinguished from equitable relief. This is a departure from the practice under the dual law and equity court system where no jury could be had in the equity court although it often granted legal relief. That seems to me to be the main purpose and effect of this statute prior to the amendment. In so doing, if followed, it would greatly simplify the problem of determining when a jury trial should be granted.

When law and equity were administered in different courts, a jury trial was available only in a court of law. Under that system no problem was presented as to whether to grant a jury trial. The equity courts were instituted to temper harshness and injustices which developed under the common law. At first, they usually intervened only after the issues of law and fact had been litigated in the law

courts. They accepted the decision of the law court on the issues of fact and interposed equitable relief often to nullify the decision in the law court. At first the equity courts were reluctant in determining issues of fact often refusing to entertain a suit until the facts had been litigated in a court of law where a jury was available. *Farrell* v. *City of Ontario,* 39 Cal. App. 351, 178 P. 740. Under this practice, all issues of fact were determined by the jury. But courts of equity to prevent a multiplicity of actions and feeling in some cases they were better qualified to determine the facts than the jury developed the practice, first of determining the facts necessary to decide whether equitable relief should be granted, then of determining the necessary issues of fact in deciding whether to grant incidental or supplemental legal relief along with equitable relief and finally in some cases equity would try all issues of fact even though in the end it granted only legal relief. This resulted in the granting of much legal relief without the right of trial by jury. *Kinsman* v. *Utah Gas & Coke Company,* 53 Utah 10, 177 P. 418; *Wasatch Oil Refining Co.* v. *Wade,* 92 Utah 50, 63 P. 2d 1070; *Ludlow v. Colorado Animal By-Products Co.,* 104 Utah 221, 137 P. 2d 347.

Under the Code and the New Rules of Procedure, with law and equity administered in one court, with a great increase in the number and kinds of matters which may be litigated in one action, it is impossible to always grant and deny a jury trial on each issue the same as under the former system. As we have seen under that system, equity courts grant almost all kinds of legal relief with or without granting equitable relief. And sometimes law courts came to grant relief which at first was granted only in courts of equity, and statutory actions were created which partook of the nature of both law and equity. Adding to all this confusion, courts have come to apply many different tests to the right to trial by jury. Often the test is stated to be whether legal or equitable principles are to be applied or the

major issue is legal or equitable, or whether the action is one of which equity would take cognizance. *Norback* v. *Board of Directors*, 84 Utah 506, 37 P. 2d 339; *Kinsman* v. *Utah Gas & Coke Co.*, supra; *Wasatch Oil Refining Co.* v. *Wade*, supra; *Ludlow* v. *Colorado Animal By-Products Co.*, supra; *Petty* v. *Clark*, 102 Utah 186, 129 P. 2d 568, 572. In a concurring opinion in the Petty case, Mr. Justice WOLFE said, "I think the real test of whether the basis of an action is legal or equitable lies largely in whether the court has discretion to grant or withhold the so-called equitable remedy." But he does not apply this test in the prevailing opinion. If this were the test, there would be few non-jury cases.

Though the application of these various tests would lead to varied results, often a number of them have been repeated in the same opinion without noticing that there is a difference. If the fact that the case requires the application of legal principles is sufficient to require a jury trial, then the fact that the case is one which would have been cognizable in a court of equity under the dual court system is not alone sufficient to require the denial of such a trial for as above pointed out equity courts often applied legal principles and granted legal relief, sometimes exclusively. A plausible argument can be advanced in almost every case where the question has been raised for both sides and the result usually depends on the approach to the question. There is absolutely no consistency in the many decisions made by this court on this question, and I think there can be none as long as we attempt to determine it on the basis of whether the case is one of law or equity. I therefore think it is unfortunate that the prevailing opinion discussed the question from that standpoint instead of relying solely on the statute as we did in the second case of *Petty* v. *Clark*, 102 Utah 186, 129 P. 2d 589, by unanimous consent.

The statute is clear and definite and if applied as herein

suggested we will avoid uncertainty, litigation, and subtle distinctions as to when a jury trial may be required. If in any action any of the kinds of relief specified by the statute are sought, a jury trial is required to determine the issues of fact involved in granting such relief.

In this state, we have no constitutional provision like California and many other states which provided that "the right of trial by jury shall be secured to all, and remain inviolate forever." *Koppikus* v. *State Capitol Comm.*, 16 Cal. 248. Our constitution provides that in "capital cases the right of trial by jury shall remain inviolate," that in criminal prosecutions the accused shall have the right to "trial by an impartial jury," and in criminal prosecutions for libel that "the jury shall have the right to determine the law and the fact." See Article 1, Sections 10, 12, and 15, Constitution of Utah. So, in civil cases, we are not required by any constitutional provision to grant the right of trial by jury as it existed at common law. *Farrell* v. *City of Ontario,* 39 Cal. App. 351, 178 P. 740. But even if we were, still this statute would not be contrary thereto because, at least before the amendment was added, it not only granted a jury trial in cases where one was granted at common law but in many other cases which legal relief would have under that system been granted by an equity court.

Notwithstanding the California decisions and the prevailing opinion to the contrary, I think it is clear that under the dual court common law system no jury trial could have been had in this case except possibly in the very early times when the court of equity would refuse to determine the questions of fact but would first require the parties to litigate such matters in a law court. For under the common law system as it finally developed, courts of equity would grant in one suit both damages and injunctive relief growing out of the same trespass but a law court never granted injunctive relief. So in order to litigate both these

questions in one action under the dual court system the matter would have to be brought in an equity court where it would be tried without a jury. I, therefore, think that the result which we reach can only be reached on the basis of this statute and is inconsistent with the practice at common law when law and equity were administered by different courts.

The courts of Oklahoma and Kansas have reached the conclusion herein contended for under a statute very similar to ours. See *Jones* v. *Benson,* 158 Okl. 25, 12 P. 2d 202; *Holmes* v. *Halstid,* 76 Okl. 31, 183 P. 969; *Collins v. Industrial Sav. Soc.,* 78 Okl. 319; 190 P. 670; *Clemenson* v. *Chandler,* 4 Kan. 558; *Fidelity Nat. Bank & Trust Co.* v. *Cloninger,* 142 Kan. 558, 51 P. 2d 35; also see concurring opinion of Mr. Justice WOLFE in first *Petty* v. *Clark* case, supra, where these cases are cited and discussed.