**SOUTHERN UTAH MORTUARY, a Utah corporation, Boyer Southern Utah Mortuary, a Utah corporation, and Graff and Boyer Investments, dba Southern Utah Mortuary, Plaintiffs and Respondents,**

v.

**ROGER D. OLPIN SOUTHERN UTAH MORTUARIES, Roger D. Olpin, dba Southern Utah Mortuary, and Roger D. Olpin Mortuary, Inc., et al., Defendants and Appellants.**

No. 880505–CA.

Court of Appeals of Utah.

June 27, 1989.

946

Robert S. Clark, Salt Lake City, for defendants and appellants.

Hans Q. Chamberlain, Cedar City, for plaintiffs and respondents.

OPINION

Before BENCH, BILLINGS, and GREENWOOD, JJ.

GREENWOOD, Judge:

Appellant Roger D. Olpin and his associated business entities (Olpin) appeals from the trial court's issuance of a permanent injunction prohibiting him from using the name "Southern Utah Mortuary," thereby permitting respondent Richard Boyer and his companies (Boyer) exclusive use of the name in Beaver County, Utah.

FACTS

In our review of the trial court's decision, we begin with the facts as found by the court. Olpin, as appellant, is required to marshal all evidence supporting the trial court's findings, and must demonstrate that "the findings lack substantial evidentiary support." *In re Estate of Bartell*, 776 P.2d 885, 886 (Utah 1989). Olpin has not adequately met that burden, either by marshaling evidence or demonstrating evidentiary insufficiency, but our statement of facts is fashioned with that standard in mind.

In the 1920's, Rube Winterrose first used the trade name "Southern Utah Mortuary" in Iron County, Utah, in connection with his funeral home in Cedar City, Utah. In the 1940's, Winterrose opened funeral homes in Beaver County, Utah, in the cities of Beaver and Milford, where he also used the trade name "Southern Utah Mortuary."

In the 1960's, Winterrose sold all three funeral homes to Richard Barnes, who continued to use the name "Southern Utah Mortuary." In 1973, Kenneth Metcalf and Dallen Williams (now deceased) purchased the three funeral homes and used the names "Southern Utah Mortuary" and "Metcalf Southern Utah Mortuary." Metcalf's son-in-law, Joseph Campbell, joined the business in Beaver and Milford, where the names "Southern Utah Mortuary" and "Metcalf–Campbell Southern Utah Mortuary" were utilized.

On December 16, 1976, Metcalf Southern Utah Mortuary, Inc., a Utah corporation formed in 1976, sold the Cedar City mortuary to Boyer. The parties' escrow agreement stated:

> The description of the real property to be sold by METCALF SOUTHERN UTAH MORTUARY to BOYER is attached hereto as Exhibit "B", and shall include in addition thereto, use of the name "Metcalf Southern Utah Mortuary", and the good will associated with said business in the Cedar City and Iron County areas.
>
> . . . .
>
> It is specifically understood that this agreement does not include the assets of Metcalf Southern Utah Mortuary located in Beaver and in Milford, Utah.

After the Cedar City sale, Metcalf continued business in Beaver County as "Metcalf–Campbell Mortuary."

In late 1981, Olpin purchased the mortuaries in Beaver and Milford from Metcalf and Campbell. Olpin had operated competing mortuaries in those cities prior to his purchase. Campbell accepted the offer on behalf of himself and Metcalf, as Metcalf was out of the country at the time. The transaction closed on December 31, 1981. The deed states:

> For and in consideration of the sale of this property by the Grantors to the Grantees, the Grantors hereby agree that they will not go back into the mortuary business for ten (10) years from December 31, 1981, in Beaver, Utah; Milford, Utah; or Fillmore, Utah; areas, or in any other area where they would be in competition with Roger D. Olpin Mortuary, Inc. at their present locations.

Olpin subsequently erected new signs in front of the mortuaries purchased, designating them as "Olpin Mortuary."

In February 1983, Boyer opened a new mortuary in Beaver called "Boyer Southern Utah Mortuary," and on April 3, 1983, Boyer filed an application to transact business under an assumed name, designating the name "Southern Utah Mortuary." After learning that Boyer was entering the Beaver market as "Southern Utah Mortuary," Olpin obtained telephone directory listings for his business as "Southern Utah Mortuary."

On July 7, 1983, Olpin filed a similar application to transact business under an assumed name, designating the name as "Roger D. Olpin Southern Utah Mortuaries." In 1985, Boyer merged his business with Spilsburg–Graff Mortuary and dropped Boyer from the name of his mortuary. Boyer then brought this action to enjoin Olpin from using the name "Southern Utah Mortuary."

At trial, the parties stipulated that the name "Southern Utah Mortuary" had acquired a secondary meaning in Beaver County and that use of the name had caused confusion in Beaver County, and would continue to do so. After trial, the court entered findings of fact which included the following: While reserving the Beaver assets, Metcalf and Boyer intended that Boyer would be entitled to use the name "Southern Utah Mortuary" in connection with his business enterprises; Boyer accordingly formed a Utah corporation on January 18, 1977, called Boyer Southern

Utah Mortuary, Inc.[1]; the transaction between Metcalf and Boyer does not mention use of the name "Southern Utah Mortuary" nor a transfer of good will, but evidences only transfer of buildings and real property, with an attendant covenant not to compete; and use of the Southern Utah designation by both parties had caused confusion to the public served by both. The trial court also found that the parties had failed to produce sufficient evidence of damages or actions that were either malicious or in reckless disregard of the other's rights. The trial court concluded that Olpin should be enjoined permanently from use of the name "Southern Utah Mortuary" or any derivative or combination of the name. The injunction was to have prospective effect only, and no damages were awarded.

Olpin appeals, claiming the court erred in concluding that Boyer was entitled to exclusive use of the trade name "Southern Utah Mortuary" in the Beaver County area.

## STANDARD OF REVIEW

In reviewing the trial court's findings of fact, we will affirm the findings unless they are clearly erroneous. Utah R.Civ.P. 52(a). However, we accord the trial court's conclusions of law no deference, and review them for correctness. *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985). Similarly, where the trial court interprets a contract as a matter of law, where no ambiguity exists which justifies examination of the parties' intent, we review for correctness only. *Allstate Enters., Inc. v. Heriford*, 772 P.2d 466, 468 (Utah Ct.App.1989).

## GOOD WILL AND TRADE NAMES

Good will is a common law concept, defined variously as

"nothing more than the probability that the old customers will resort to the old place[,]" ... [or] "the advantage or benefit, which is acquired by an establishment, beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position, or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances, or necessities, or even from ancient partialities or prejudices."

Nims, *The Law of Unfair Competition and Trademarks*, § 13 at 74–75 (4th ed. 1947). Good will is property and is transferable, but has value only in the presence of competition. *Id.* § 13 at 77. Good will cannot be transferred apart from the business with which it is connected. *Id.* § 17 at 86. Consequently, the sale of a business presumptively includes the sale of the business's good will, even though it is not specified. *Id.* § 17 at 91. Good will may be represented by a trade mark or a trade name. *Id.* § 15 at 81. The right to use a trade name representing a business's good will may be transferred to a limited geographical territory, with rights to the name retained or assigned to another in a different location. *Id.* § 35a at 49–50. "A covenant not to compete with the vendee in the same market, perhaps for a specified time, accompanying an assignment of assets of a business, has been held evidence of an intent to sell the good-will of the business even though the good-will is not specified in the sale." *Id.* § 17 at 92. In *Valley Mortuary v. Fairbanks*, 119 Utah 204, 225 P.2d 739 (1950), our supreme court stated that

"where a person sells a business and in connection therewith agrees not to engage in the same business in the same place, the obvious intent is to sell the good will of the business; and where a contract for the complete sale of a business omits to mention the good will, the presumption is that it was the intention of the parties that the good will pass with the other assets." ... Thus the fact that in the agreement express men-

---

1. Metcalf and Campbell also provided a letter from the Utah Secretary of State, consenting to Boyer's corporate name.

tion was not made of the good will does not preclude it from passing by the agreement.

*Id.* 225 P.2d at 742 (quoting 24 Am.Jur. § 13). A trade name may be abandoned, but determination of abandonment is a question of fact. *Turner v. Gilmore,* 50 Wash.2d 829, 314 P.2d 658, 659 (1957). Words in the public domain may acquire a "secondary meaning" giving rise to a protectible interest to those words as used in their secondary meaning as a trade name. *Id.* § 38 at 160; *George v. Peterson,* 671 P.2d 208, 211 (Utah 1983).

■ Utah Code Ann. § 42–2–9 (1988), provides that

This chapter [conducting business under assumed name] shall in no way affect or apply to any corporation duly organized under the laws of this state ... which shall carry on, conduct or transact its business under its true corporate name nor shall this chapter in any way affect the statutory or common law trademark, service mark, or trade name rights granted by state or federal statute.

Therefore, registration under this section cannot be used to destroy rights to the use of a trade name properly developed under common law. In *First Nat'l Bank of Lander v. First Wyoming Savings & Loan Ass'n.,* 592 P.2d 697, 704 (Wyo.1979), the court interpreted a similar Wyoming statute and held that the trademark statute was not intended to vest by mere registration the exclusive ownership of a trade name absent common law usage to support it, especially where prior rights of others have accrued in the trademark.

## ANALYSIS

■ We first consider the extent of the right to use of the trade name "Southern Utah Mortuary" obtained by Boyer by virtue of his 1976 purchase of the Cedar City mortuary. The parties' contract states that Boyer is purchasing "use of the name 'Metcalf Southern Utah Mortuary', and the good will associated with said business in the Cedar City and Iron County areas.... It is specifically understood that this agreement does not include the assets of Metcalf Southern Utah Mortuary located in Beaver and in Milford, Utah." The trial court found that the parties in-

tended to transfer all the seller's rights to the name "Metcalf Southern Utah Mortuary," while reserving to them only the assets in Beaver. There is sufficient evidence to support that finding of intent and thus we do not disturb it. Likewise, there is sufficient evidence to find that after the 1976 Boyer sale, Metcalf–Campbell operated in Beaver primarily as Metcalf–Campbell Mortuary, having abandoned rights to the "Southern Utah Mortuary" name after the transfer to Boyer.

■ Next, we consider the rights Olpin secured in the 1981 purchase. While the contract in that transaction does not mention good will nor use of the name "Southern Utah Mortuary," it does contain a covenant to not compete in the same geographical area. In *Eldridge v. Johnston,* 195 Or. 379, 245 P.2d 239, 251 (1952), the Oregon court held that covenants to not compete "are usually required for the protection of the good will of the business being sold. Protection of the good will is the principal, if not the only, justification for the same." Since the sale of an ongoing business presumptively includes sale of the business's good will and a covenant to not compete is presumed to be intended to protect that good will, we find that the trial court erred in concluding that failure to mention good will means that it was not transferred to Olpin. However, we agree with the trial court that the good will did not include rights to the name "Southern Utah Mortuary" as all of Metcalf–Campbell's rights in the name had previously been sold *in toto* to Boyer. Therefore, the trial court correctly concluded that Olpin's acquisition of Metcalf–Campbell's good will could not include the trade name "Southern Utah Mortuary," because Boyer acquired all of Metcalf–Campbell's rights in the name in 1976, and Metcalf–Campbell abandoned the name in Beaver County.

Affirmed.

BENCH and BILLINGS, JJ., concur.